## THE STATE v. CLOSE.

1. **Criminal law: NUISANCE: MILL-DAMS.** Indictment, charging "that defendant in, etc., on, etc., being possessed of a certain mill-dam and mill, with their appurtenances, situate near and adjacent to a common highway and public road, and the dwelling-house of divers persons and citizens of Johnson county, did at, etc., unlawfully and injuriously cause and permit the waters of said mill-dam to overflow the adjacent lands, as well of others as his own, by means whereof the water of said dam was rendered impure, corrupted and unwholesome, and the land overflowed, as aforesaid, rendered and kept marshy, and filled with noxious weeds and putrid vegetation, and corrupted, impure and unwholesome water, whereby the air became corrupted and infected, to the injury and prejudice of others, contrary to the form of the statute, etc. *Held*, that the indictment sufficiently charged a public or common nuisance under the statute.

2. While the owner of premises may lawfully erect a mill-dam across an unnavigable stream, yet if it be so erected or managed as to become prejudicial to the health or comfort of others, it thereby becomes a nuisance.

*Appeal from Johnson District Court.*

TUESDAY, JANUARY 22.

THE grand jury presented an indictment against the defendant as follows:

"The jurors of the grand jury of the State of Iowa, within, etc., upon their oath do aver, find and present that M. T. Close, at and within said county, on the 1st day of April, A. D. 1869, being possessed of a certain mill-dam and mill, with their appurtenances, situate near and adjacent to a common highway and public road, and the dwelling-houses of divers persons and citizens of Johnson county, did, at the time aforesaid, and on divers other days and times between that day and the finding of this indictment, unlawfully and injuriously cause and permit

the waters of said mill-dam to overflow the adjacent lands as well of others as his own, by means whereof the water of said mill-dam or pond was rendered impure, corrupted and unwholesome, and the land overflowed as aforesaid by the means aforesaid, was rendered and kept marshy and filled with noxious weeds and putrid vegetation, and corrupted, impure and unwholesome water, whereby the air became corrupted and infected, to the injury and prejudice of others, contrary to the form of the statute," etc.

To this indictment the defendant demurred, which being sustained by the court, the State appeals.

*M. E. Cutts*, attorney-general, for the State.

No appearance for the appellee.

MILLER, J.—This indictment seems to have been drawn under section 4409 of the Revision of 1860. That section is as follows : " The erecting, continuing or using any building or other place for the exercise of any trade, employment or manufacture, which by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort or property of individuals or the public, the causing or suffering any offal, filth or noisome substance to be collected or remain in any place to the prejudice of others; the obstructing or impeding, without legal authority, the passage of any navigable river, harbor or collection of water; *or the corrupting or rendering unwholesome or impure the water of any river, stream or pond ;* or unlawfully diverting the same from its natural course or state to the injury or prejudice of others ; and the obstructing by fences, buildings or otherwise the public highways, private ways, streets, alleys, commons, landing places or burying grounds, are nuisances." Each of the acts enumerated in this section is declared to be a nuisance. It is not declared in express

terms whether these acts, or any, or which of them, are public or common nuisances and indictable as such. Being declared to be nuisances generally, they become public or private as they tend to the public injury or only to the injury of private individuals as contradistinguished from the public. 3 Black. Com. 215; 4 id. 166–7. See, also, *Ewell* v. *Greenwood*, 26 Iowa, 377; *State* v. *Moffit*, 1 G. Greene, 247.

Section 4412 of the Revision provides that "whoever is convicted of erecting, causing or continuing a public or common nuisance as described in this chapter, or at common law, * * * shall be punished by fine not exceeding $1,000," etc.

By this section every public or common nuisance, whether it be such under the statute or at common law, is indictable. The inquiry, therefore, arises whether the indictment in this case charges a public or common nuisance under the statute, as it is not claimed that it charges one at common law.

The demurrer admits the truth of the averments of fact in the indictment for the purpose of determining its sufficiency. It is averred that the defendant's mill-dam is situated near and adjacent to a common highway and public road; that the defendant " did *unlawfully* and *injuriously* cause and permit the waters of said mill-dam to overflow the adjacent lands," * * * by means whereof the water in said mill-dam or pond was rendered *impure*, corrupted and unwholesome, * * * and that the land thus overflowed "was rendered and kept marshy and filled with *noxious weeds* and *putrid vegetation*, and *corrupted*, *impure* and *unwholesome water*, whereby the *air became corrupted and infected*," etc.

The acts here alleged constitute a nuisance as defined in section 4409 of the Revision, and if it can be understood from the language of the indictment that the nuisance affected the public injuriously, then a public nuisance is

charged. If it can be understood that the indictment shows that the water of the dam or pond near or adjacent to the public highway was rendered impure, corrupted and unwholesome, and that the alleged noxious weeds and putrid vegetation rendered the air impure and unwholesome near and adjacent to the public highway, then the indictment will be held to charge a public nuisance. The nuisance would, if in such close proximity to a public highway, affect the public passing and repassing thereon and be a public nuisance. See Wharton's Am. Cr. Law (3d ed.), 800, 801, 802; *Commonwealth* v. *Weed*, 6 Randolph, 726.

While the indictment might have been drawn so as to state with a greater degree of certainty the facts which constitute the alleged nuisance a public one, yet we think it is stated with sufficient certainty " and in such a manner as to enable a person of common understanding to know that it is intended to charge that the nuisance was created and maintained " near and adjacent to the public highway and near the dwelling-houses of divers persons." We think the indictment sufficiently certain in this respect, and being so, it is to be held sufficient. Revision, § 4659.

II. It is objected by the demurrer that " the overflow of lands by the reflow of water necessarily follows the erection of dams, and the legislature did not intend to prohibit the erection of mill-dams."

We suppose that it is meant by this statement of the demurrer (although we are not favored with an argument from appellee) to affirm the doctrine that because it is or may be lawful to erect mill-dams, therefore such lawful act cannot result in a nuisance. It may be conceded that the owner of premises may lawfully erect a mill-dam across a stream not navigable. In such case the dam will not *per se* be a nuisance, and this is so with any lawful business or erection. But whenever they are erected, managed or carried on in such places or in such manner as

to become prejudicial to the health or comfort of others they become nuisances. See 3 Bl. Com. 217, 218; Wharton's Amer. Cr. Law (3d ed.), 801; *State* v. *Purse*, 4 McCord, 472.

By chapter 92, Laws of the fifth General Assembly (art. 4, chap. 54 of the Revision), the legislature has provided the mode of condemning to the use of persons desiring to erect mill-dams, the lands overflowed or injured thereby, and the issuance of a license by the court to that end is provided. But the object and purpose of this act was to bring into exercise the power of eminent domain in behalf of persons desiring to erect mills to be propelled by water power on streams of water where such persons own the land on both sides thereof, so as to enable them to condemn to that use (deemed a public one) the property of others overflowed or injured by the erection of the necessary dam.

There is nothing in the act which will authorize or license the creation of a nuisance in the erection of such dam if the water is corrupted or rendered unwholesome, putrid, or impure, or if thereby the air is corrupted by any matter sending forth noisome and offensive smells dangerous to the health or comfort of individuals or the public. Nor does section 4409 of the Revision make any exceptions in behalf of any persons who may by any means produce these results. We are sustained in these views by the following cases: *Commonwealth* v. *Clark*, 1 A. K. Marsh. 323; *Douglass* v. *The State*, 4 Wis. 387; *Eames* v. *New Eng. Worst. Co.*, 11 Metc. 570; *The State* v. *Gainer*, 3 Humph. 39; *The People* v. *Townsend*, 3 Hill, 479; *Leming* v. *The State*, 1 Chand. 178; *Stoughton* v. *The State*, 5 Wis. 295.

In Wisconsin a distinction is made between a case of nuisance created by the erection of a mill-dam under a general act of the legislature authorizing the erection of mill-dams, and one erected under a special act of the legis

lature designating the place where the dam may be erected and the height to which it may be built. The former is held indictable and the latter not. See the cases above cited in 1 Chand. and 5 Wis.

This question does not present itself to us on this demurrer, for the reason that it does not appear whether the mill-dam mentioned in the indictment was erected under a special act, or under the general law. Nor, indeed, does it appear that it was erected under either.

It is further objected that " the impurity of water is not the natural result of the erection of dams." This is not a question of law but one of fact, proper to be submitted to the jury upon a trial, and cannot be considered on demurrer.

The demurrer was improperly sustained.

Reversed.