MILLS COUNTY et al., Appellees, v. JOHN HAMMACK, Appellant.

**NUISANCE:** Prescriptive Right Against the Public.   No period of time will give a party a right to maintain a structure, e. g., a dam, after it has become a menace to the public and to the public's property; and it is immaterial that the original construction was rightful.

**COUNTIES:** Liability—Drains. Principle reaffirmed that no liability 2 is imposed upon a county in connection with the establishment by the board of supervisors of a public drainage improvement.

Headnote 1: 29 Cyc. p. 1207. Headnote 2: 15 C. J. p. 570; 19 C. J. p. 709.

*Appeal from Mills District Court.*—O. D. WHEELER, Judge.

MARCH 17, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION in equity, to have a certain mill dam owned by the defendant declared a public nuisance, and to require defendant, by mandatory writ of injunction, to abate same by removing it from the channel of the river in question. The trial court decreed that the dam in its then condition constituted a public nuisance, and fixed a time within which it should be abated; and upon the failure of the defendant to respect the order of the court in the premises, the sheriff was directed to remove the dam, at the expense of the defendant. From the decree entered, defendant appeals.—*Affirmed.*

*W. S. Lewis* and *Genung & Genung,* for appellant.

*Cook, Cook & Cook,* for appellees.

DE GRAFF, J.—The facts in this case are not in serious dispute. The record discloses that, for many years prior to April 23, 1919, the defendant maintained a 70-foot mill dam across the Nishnabotna River, in Mills County, Iowa. A county road crosses said stream about 200 feet below and south of the dam, and at this point the county maintained a highway bridge. About 350 feet south of this bridge, the Wabash Railroad Company owns and maintains a steel span bridge across the river, on its line of railroad from Omaha to St. Louis. The natural channel of the Nishnabotna, for a long time prior to 1919, was across said dam and under the highway bridge of the plaintiff county. On April 23d of that year, the river washed away about 15 feet

of the dam at the east end thereof, and has eroded the east bank of the river to such an extent that, at the time of this action, the water in the river passed to the east of the dam, and, except in times of flood, none of the water passed over the dam. This condition caused the earth at the east end of the dam to wash away for a distance of 70 feet to the east, making the east bank of the river at that point 70 feet farther east than at any time prior to April, 1919, and creating a new channel east of the dam some 70 feet in width. At the highway bridge, more than 100 feet of the east bank of the river had been washed away, leaving the east end of the bridge about 120 feet west of the east bank of the river, with none of the water in the river flowing under the bridge. The current then left the east bank, striking the west bank of the river immediately above the railway bridge, causing the west end of the bridge to be imperiled. From an engineering viewpoint, the construction and maintenance of the county highway are practically impossible, as long as the dam remains in its present condition, with the result that the county is without a bridge, and the public has no way of crossing the river at this point. Due to these conditions, the highway was closed for more than two years prior to the trial, and proposed work on the bridge had to be abandoned. It appears from the evidence, based on the testimony of the engineer, that the injury to the plaintiffs can be averted, either by tearing out the dam itself, and thus allowing the water to flow unimpeded in its natural channel, or by constructing a dam across the present channel of the stream in extension of the present dam, tying it to the east bank a little above the present site, and building it of sufficient height to force the flow of water over the old dam.

The trial court found that the dam in its then condition is of no utility, and a nuisance and a menace to the public. The evidence clearly sustains this view.

Appellant contends that he has a prescriptive right to the use of the mill site and dam, as it was built some 30 years ago and has been maintained by him and his grantors during said period. As against the public, the defendant has no vested right, by prescription or otherwise, in the continuance of a thing shown to be a public nuisance; nor is it a defense to an action of this charac-

1. NUISANCE: prescriptive right against the public.

ter that the dam was lawful when it was constructed. If it is now shown to constitute a nuisance, the legitimate character of its origin does not defeat an action for its abatement. *City of Waterloo v. Waterloo, C. F. & N. R. Co.*, 149 Iowa 129. See, also, *State v. Close*, 35 Iowa 570. That the dam in its present condition does seriously affect a public highway and the public, cannot be questioned.

Appellant further claims that the construction of Drainage District No. 4 caused the mill dam to be washed away, and that for that reason the plaintiff county should not be allowed to take advantage of a condition of which it was the cause. The record fails to support this claim. The testimony of the engineer is to the contrary. He states that the construction of either Drainage District No. 4 or No. 5 had no effect on the water at the side of the dam, except to cause the water to flow with greater velocity. The county, however, is not charged with any liability in this particular, and no duty is imposed upon the county in connection with the establishment of the drainage districts. It is said in *Canal Const. Co. v. Woodbury County*, 146 Iowa 526:

2. COUNTIES: liability: drains.

"There would be a manifest injustice in holding the county liable for the mistakes or neglect of the officers to whom the organization, management, and taxation of the district are intrusted."

See, also, *Yockey v. Woodbury County*, 130 Iowa 412.

The findings of fact by the trial judge are in harmony with the record facts, and are clearly sufficient to justify the abatement of the dam as a public nuisance. The decree entered is affirmed, with directions to fix a new date within which time the defendant shall abate said nuisance; and, upon failure to comply with the order of abatement within the time fixed, the sheriff of Mills County shall be authorized and directed to abate said nuisance, under conditions prescribed by the trial court in a supplemental decree.

The judgment and decree entered is, therefore,—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.