BURROUGHS v. SATERLEE ET AL.

1. **Injunction:** ALLEGATION OF INSOLVENCY AIDED BY ADMISSIONS OF DEFENDANTS. In plaintiff's petition for an injunction he alleges that defendants have but a small amount of property exempt from execution, and are not responsible for the damages occasioned by the wrongful acts sought to be enjoined. There was no motion for a more specific statement in the court below, but, on the other hand, it was conceded on the trial, for the purposes of the case, that defendants did not own a dollar's worth of property in the world. *Held* that it could not be urged on appeal to this court that the petition was insufficient in this respect to entitle plaintiff to an injunction.

2. **Water-courses:** DIVERSION OF SUBTERRANEAN STREAM: RULE STATED AND APPLIED. When one in good faith sinks a well on his own land, the owner of a well on adjoining land has no cause of complaint if the water from his well is drawn off or decreased by percolation through the earth; but when subterranean water flows in a distinct

channel, an adjoining owner of land has no more right to divert its course than if the stream were on the surface of the earth. And so, where plaintiff had an artesian well on his land, and defendants afterwards, by boring on their adjoining land, intercepted the same stream, thereby causing the water to cease flowing in plaintiff's well. but the quantity of water was ample for both parties, and could easily be made to flow at both wells by a simple adjustment of defendants' pipes, *held* that defendants were properly required so to adjust their pipes as not to cut off plaintiff's supply of water, and that an injunction was properly granted to secure that end.

*Appeal from Buena Vista District Court.*

TUESDAY, DECEMBER 8.

THIS is an action in equity by which the plaintiff seeks to enjoin the defendants from interfering with the flow of an artesian well, the property of the plaintiff. There was a trial by the court, and a decree for the plaintiff. Defendants appeal.

*J. F. Duncombe* and *A. E. Clarke*, for appellants.

*Joy, Wright & Hudson* and *A. F. Meservy*, for appellee.

ROTHROCK, J.—I. The plaintiff claims that he is the owner of certain land in Cherokee county, and that he leased part thereof to the defendant George Saterlee for mining purposes; that in 1879, while boring for coal on said land, Saterlee struck three distinct veins of water, one of which is magnetic, and possesses medical properties of great value; that pipes were put in said well in the year 1879, so that the veins of water flow high enough above the surface of the ground that the water can be distributed to bath rooms built near said well; that in 1880 the plaintiff conveyed a half interest in the well, and in eight acres of land surrounding the same, to said Saterlee, and in the latter part of that year the defendants conveyed all their interest in said well and land to the plaintiff for the consideration of $2,500, and the defendants surrendered to the plaintiff all right to the well and to the land

and improvements thereon. Soon after defendants conveyed their interest in the land and well to the plaintiff, they purchased a small tract of land adjoining plaintiff's, land and commenced boring for water. A well was sunk on this land at a point about 200 feet from plaintiff's well, and the same vein of water was struck which flowed from plaintiff's well. Before defendants purchased this tract of land, they and plaintiff were intending to buy it for the purpose of protecting the original well on plaintiff's land, and it was agreed between them that, if any well sunk on this tract affected the flow of water from plaintiff's well, defendants' well was to be closed up. And at the time defendants commenced boring for water on their land it was agreed between them and plaintiff that if water was found by them, and the flow therefrom injured plaintiff's well, the defendants would close up their well, or in some manner regulate the flow therefrom so as not to interfere with the flow of plaintiff's well; that the defendants urged the plaintiff to go on with improvements on his property, with the positive assurance that they would not divert the water from his well; that in pursuance of such promise, and on the faith thereof, the plaintiff expended about $23,000 in improvements, consisting of a large hotel and appurtenances, and beautifying the adjacent grounds; that he advertised the medicinal properties of said water, and exported large quantities thereof, and many people frequented said watering-place for treatment and for pleasure, and that the said property became a source of great revenue to him; that, when the defendants struck the vein of water which flowed from plaintiff's well, the ground at defendants' well being lower than the discharge-pipes at plaintiff's well, the latter almost ceased to flow; that, in pursuance of the agreement between the parties, plaintiff furnished a pipe to place on top of the pipe in defendants' well, so as to make the discharge-pipes in the two wells on the same level; that the defendants put the said pipe upon the pipe in their well, and when that was done there was a flow of water from both wells sufficient for all purposes; that the

pipes were so maintained in both wells, and plaintiff continued to make improvements, relying on the defendants' carrying out their agreement and representations in good faith, until a short time before the commencement of this suit, when the defendants, disregarding their agreements and plaintiff's rights in the premises, and for the purpose of annoying him, and preventing him from carrying on his business, and rendering valueless his property, have, at different times, and when plaintiff had large orders for the shipment of water from his well, removed the pipe from their well, and prevented the flow of water from plaintiff's well, to the great damage of the plaintiff; that defendants thus interfered with the flow of plaintiff's well out of mere wantonness, they having no use for all the water from said vein, and that a very small part of the flow from their well is sufficient for their purposes when the discharge pipes are on a level; that, if defendants are permitted to thus draw the water from plaintiff's well, the plaintiff's property will be greatly damaged and his business broken up and destroyed, and the plaintiff fears that, unless restrained, the defendants will continue to divert the water from his well; that the defendants have but a small amount of property exempt from execution, and are not responsible for the damages to the plaintiff's property and business by reason of their wrongful acts.

Counsel for appellants claim that the averments of the petition do not show that the plaintiff is entitled to maintain an action for an injunction. It is urged that the petition does not aver the insolvency of the defendants. It is true, it is not stated in the petition that the defendants are proof against an execution; but it is averred that they are not responsible for the damages for which they are liable. In the absence of a motion for a more specific statement, this is sufficient. This question was not made in the court below. Instead of making the question, the following concession was made upon the trial: " It is admitted that if the plaintiff is entitled to

1. INJUNC-
TION: allega-
tion of insol-
vency aided
by admis-
sions of de-
fendants.

Burroughs v. Saterlee et al.

relief under the bill he is entitled to an injunction, irrespective of the financial standing of the defendants. For the purposes of this case it is conceded that the defendants do not own a dollar's worth of property in the world."

II. The evidence in the case fully sustains the material averments of the petition. These facts have already been stated, and need not be repeated. The court decreed " that the discharge-pipe upon defendants' said well be kept and maintained at a height not lower than the discharge-pipe at plaintiff's well at the bath-house on his said premises, and be of such size as not, by the flow of water therefrom, to interfere with the flow of water at plaintiff's well; and the defendants are ordered, adjudged and decreed to so maintain, keep and operate their said well that the water therefrom shall be discharged through the pipe sunk therein, and shall not be permitted or suffered to flow up around the outside of said pipe."

*2. WATER-COURSES: diversion of subterranean stream: rule stated and applied.*

The evidence shows that by an observance of this decree both parties will have an ample supply of water for all purposes, and neither will have just cause of complaint against the other. The defendants ought to be satisfied with the decree. It is nothing more than an exemplification of the broad equitable principle that a person ought to use his own in such a way as not to injure another, when it can be done without injury to himself. But the defendants insist that, when one in good faith sinks a well on his own land, the owner of a well on the adjoining land has no cause of complaint if the water from his well is drawn off or decreased by percolation through the earth. That this is a correct proposition of law seems to be well settled. See *Hougan v. Milwaukee & St. P. R. Co.*, 35 Iowa, 558, and authorities there cited. Defendants' counsel have cited many authorities in support of this proposition. These authorities, however, as counsel concede, are quite decisive on another proposition, which is that, when subterranean water flows in a distinct channel, an

adjoining owner of land has no more right to divert its course than if the stream were on the surface of the earth.

In Gould, Waters, § 281, the rule is thus announced: "If underground currents of water flow in clearly-defined channels, the rule of law which governs the use of similar streams flowing upon the surface is applicable to them.    *    *    * An action will equally lie for the obstruction or misuse of a subterranean stream or of surface water after it has become a part of an open stream or spring, and the owner of land has no right to construct his well or other structure in such manner as to create upon his own land an artificial underground current from a running stream." And see, also, Washburn on Easements, 347, and Angell on Water-courses, § 112.

All of the cases define underground streams which one proprietor of land may not divert from those of the adjoining owner as those having clearly-defined channels, and it must be admitted that this fact is very difficult to establish by evidence. But here we have a case of two flowing wells. The evidence shows conclusively that the water does-not percolate or filter through the earth from one to the other. When the defendants, in boring their well, struck the vein, the water almost immediately ceased to flow from the plaintiff's well, and the water that did come to plaintiff's well was filled with sand, which, no doubt, was caused by the disturbance of the vein or stream by the operations in defendants' well; and when the auger used in boring defendants' well was removed, the well of plaintiff ceased to flow. And, pending the trial, the defendants admitted of record "that the vein tapped by Mr. Saterlee's well is the same vein which supplies the well first sunk on the property now owned by Burroughs;" (the well in controversy;) and this was nothing but an admission of a fact that was not disputed and could not be controverted on the trial. When the discharge-pipe on defendants' well is, lower than that on plaintiff's well, all of the water flows from defendants' well; and when the change is made, the water finds its way, not by mere filtration, but the effect is immediate.

These being the facts, we think the court very properly held that these parties should each use the water from his own well so as not to injure the other, upon the same principle that the owner of land over which a stream of water has its course may have a reasonable and proper use of the water as it flows, but may not wholly divert it from the adjoining proprietor.

AFFIRMED.