## WILSON v. HANTHORN.

1. **Mill Dam**: LICENSE TO ERECT: APPRAISEMENT OF DAMAGES: WHO MADE PARTIES: CONTINGENT DAMAGES. A person seeking a license under the statute to erect a mill dam must make all persons parties whose lands "will be overflowed or otherwise affected thereby;" but this means only those persons whose damages are the direct result of the erection of the dam under the circumstances existing at the time; and when this has been done, and such persons have been compensated, the licensee may proceed with safety under his license, and he cannot afterwards be held liable for damages subsequently accruing to other lands through a concurrence of contingent causes which could not be foreseen, and whose results could not be estimated, at the time of procuring the license.

*Appeal from Harrison Circuit Court.*

FRIDAY, OCTOBER 7.

ACTION in equity to abate a mill-dam, and for the recovery of damages. There was a decree for the plaintiff. The defendant appeals.

*Sapp & Pusey* and *Lyman & Hunter*, for appellant.

*Henry Ford* and *Dewell & McGavern*, for appellee.

ADAMS, CH. J.—The dam in question is in the Boyer river. In 1865 the person then owning the land and water-power obtained a license to erect a dam and flouring mill. A proceeding under the statute for the ascertainment of damages that might be sustained by land-owners by reason of back-water was instituted, and a license was granted in pursuance thereof. It is true that the clerk of the court omitted at the time to make the proper record entry ; but afterwards, by proceedings duly instituted, an order was made that the entry be made *nunc pro tunc*, and we may now treat the matter as if the entry had been made at the time. Under the license, the licensee proceeded and erected a mill and dam, and the same appears to have been maintained and used by him and his grantee from that time.

The plaintiff is the owner of land about four miles dis-
tant from the dam in a straight line, and about six miles by
the course of the river, and about three-fourths of a mile dis-
tant from the river at the nearest point.   During the last
few years the bed of the river has been elevated somewhat by
the deposit of sediment.   It appears, also, that the land for
some distance from the river has become wetter than for-
merly, and there have been places where it has been imprac-
ticable at times to raise crops.   This is attributed by the
plaintiff in part to overflow from the Boyer river, and in
part to the percolation of water through the soil.   It does
not appear that the dam, at the time it was erected, caused
any damage to the plaintiff's land.   In the proceedings
instituted for the ascertainment of damages, it seems to have
been assumed that the land in question would not be over-
flowed or otherwise affected, and the owner was not made a
party to those proceedings.   On the plaintiff's theory, the
injury complained of is the result of natural causes occur-
ring within the last six years, which causes have been ren-
dered injurious by reason of the dam erected fifteen years
before.   He affirmatively disclaims that his land was injured
by the erection of the dam alone, without the concurrence
of other causes, and he does this to avoid the defendant's plea
of the statute of limitations.

So far as the question of overflow is concerned, we are of
the opinion that it could be disposed of as a mere question
of fact.   Careful surveys have been made, and the height of
the plaintiff's land above the water at the dam has been ascer-
tained.   It appears that a slough runs through the plaintiff's
land, and the evidence shows to our satisfaction that the
water in the slough is about three feet higher than the water
in the dam, and that the plaintiff's land is about three feet
higher than the water in the slough.   The defendant's mill-
pond must be substantially level with the water on the dam,
and we are led to the conclusion that whatever overflow there
has been at times did not come from the mill-pond.   The

plaintiff and his neighbors seem to think that it did. But the stream is a very sluggish one, and it is probably impossible to know, without the aid of instruments, precisely where the head of back-water was in time of either high or low water. In high water the swollen condition might easily be attributed by an ordinary observer to back-water, when in fact it was not due to that. It appears to us that the surveys made for the purpose of ascertaining the height of the plaintiff's land are more reliable evidence than any other which we see upon that point, and that, if they are correct, the plaintiff's land could not be overflowed by reason of the dam.

The question of the percolation is not quite as easy to be disposed of as a question of fact. We are not prepared to say that, if the soil had become saturated by reason of percolation, standing water, from whatever source it might come, would not less readily be absorbed, and, if not absorbed, that injury might not be sustained. But, in the view which we have of the statute under which the license was obtained, neither the question of fact as to the percolation nor as to the overflow is vital to the case.

When a person desires to utilize a water-power and erect a mill, there should be some way in which he can proceed with safety. The law allows private property to be taken in consideration of the public benefit resulting from a mill. It points out how land may be taken and a license procured. (Code, § 1188, and following.) The person seeking a license must file a petition giving the names of the persons whose lands " will be overflowed, or otherwise affected thereby." The question presented is as to what lands are contemplated as affected. Of course, those are contemplated which will be affected directly by the dam. Injuries thus accruing can be foreseen with such reasonable certainty that it is practicable to bring the land-owners in, and make them defendants, and ascertain their damages. But how about those whose lands are not directly affected, and never can be affected, except by the concurrence of contingent causes which cannot be fore-

seen, and much less practically estimated ?   The plaintiff's land was four miles from the dam, and three-fourths of a mile from the river at the nearest point.   There was no complaint for fifteen years.   He has now been allowed to recover $1,800, and have a decree for the abatement of the dam, and the plaintiff's neighbors appear from the evidence to be claiming that they also have suffered from the dam.   We do not think that the person seeking a license was bound to bring in such persons as the plaintiff, and compensate them, in order to obtain a license under which he could erect his dam and mill with safety.   We think that the statute contemplates that only those shall be brought in whose damages are the direct result of the erection of the dam, under the circumstances as they existed at the time.

We think that the plaintiff has failed to show any damage for which he can recover, or any ground for a decree abating the dam.                                                    REVERSED.