DENNIS HEALEY et al., Appellants, v. CITIZENS GAS & ELECTRIC COMPANY, Appellee.

**WATERS AND WATERCOURSES: Dams—Damages From Percolation.** One who, under the statute (Ch. 363, Code of 1924), impounds the waters of a river by the construction of a mill dam, but in so doing fails to make the owners of lands *adjacent* to the impounded waters parties to the condemnation proceedings, is, irrespective of any question of negligence, liable for the damages to said *adjacent* lands resulting from the percolation of the heightened waters through the abutting lands and *into said adjacent lands.*

Headnote 1.   40 Cyc. pp. 674, 675.

*Appeal from Floyd District Court.*—M. F. EDWARDS, Judge.

DECEMBER 11, 1924.

ACTION at law, to recover damages for injury to real estate of the plaintiffs, alleged to have been caused by overflow and percolation of water, claimed to have been the result of impounding water by a dam constructed by defendant. Plaintiffs alleged injury to their lands, caused by the erection of the dam. Defendant denied, in its pleadings, such injury; but there was a stipulation as to the facts, or rather, as we understand it, an agreed abstract, which will be referred to in the opinion. Trial to a jury. The court, by its instructions, limited the jury to damages resulting only from overflow, and instructed that no recovery could be had for percolation. The jury, on the issues submitted, found for the defendant. Plaintiffs appeal.—*Reversed.*

*J. C. Campbell,* for appellants.

*Edwards, Longley, Ransier & Harris,* for appellee.

PRESTON, J.—Plaintiffs allege that they are the absolute owners in common of certain real estate described, which lies adjacent to and on the east side of Cedar River; that defendant is engaged in the business of manufacturing and transmitting electricity, and, during the time referred to, was the owner of a dam across the river and other properties and water rights situated on and along said river; that, prior to 1917, an old dam had been maintained, several years; that, during 1917, and prior thereto, defendant constructed a new dam, which was completed April 1st of said year; that, after the completion of the dam, it caused the water in the river above the dam to rise and remain permanently at a height several feet above the old dam: that, by so doing, the water overflowed and permanently permeated and saturated the premises of plaintiffs, and rendered same unfit for agricultural uses of any kind, and destroyed its market value, to plaintiffs' damage in the sum of $1,625.

The answer admits that plaintiffs' land lies adjacent to the river, and its ownership of the dam as alleged; denies all allegations not admitted.

Plaintiffs' land does not reach to, or touch, the river. The record does not show the distance from the river, but it is stated in oral argument that it is close,—about ten rods. The character and height of the intervening land do not appear; but the inference is that it was somewhat higher than plaintiffs' land; otherwise, plaintiffs' land would have overflowed. The evidence tends to show that there was some slight overflow, but a recovery for this was authorized by the instructions, had the jury found as a fact that there was overflow. There was some conflict in the testimony, as to whether plaintiffs' lands had been overflowed. This is conceded. The levels are not given; but any difficulties which plaintiffs would otherwise have had in proving that the percolation and injury to their lands were caused by the added height of the water, and elements of uncertainty as to whether the wet condition of plaintiffs' land was caused, in whole or in part, by percolation, as a result of the damming of the river, or from natural sources, as rainfall, natural drainage, porous soil, and the like, are obviated by a

concession in reference thereto. There might be some difficulty in a jury's determining, or separating, the damage caused by the defendant and that due to other causes; but, even so, it was a question for the jury as to such amount. The jury was so instructed. *Vogt v. City of Grinnell,* 133 Iowa 363, 366; *Norfolk & W. R. Co. v. Amicon Fruit Co.,* 14 A. L. R. 547, 551. It does not appear, nor is it claimed, that the seepage or percolation was through any embankment surrounding an artificial reservoir at which water was maintained at a higher level than the natural surface of plaintiffs' land. As said, the inference is that the intervening land was higher than plaintiffs'. The defendant did maintain a reservoir or pond. It does not appear that there were any visible or known openings, passages, or courses, through which water was discharged upon plaintiffs' land. Neither does it appear that there were some unknown subterranean channels. It is not claimed by defendant that it had acquired any grant or rights from plaintiffs or their grantors, or that plaintiffs were parties to any condemnation proceedings; on the contrary, the claim is that it had, by grant or otherwise, secured an easement of flowage over all lands except plaintiffs'.

We are not called upon in this case to determine whether, in every case where there is percolation from one tract of land to another, without any artificial raising or storage of water, there is liability therefor. The question is clear-cut, and narrowed to the one proposition whether, under the record in this case and the conceded facts, the question should have gone to the jury as to plaintiffs' alleged injury by percolation.

The agreed statement of facts is this:

"Plaintiffs are the owners of the land; defendant is a corporation owning and operating a dam on the Cedar River, at Nashua, Iowa. There had been an old dam at Nashua for a number of years, but that a new dam was constructed by defendant some time before this suit was instituted, and that the level of the water was raised at the point of the dam seven and one-half feet. Defendant had, by grant or otherwise, secured an easement of flowage of all lands, except the parcel owned by plaintiffs in this case, on which the dam caused water to be impounded, and that license had been duly granted to defendant to construct said dam, as provided in Chapter 1, Title IX, of

the Code, and as otherwise provided and required by law; that the evidence showed that very little of the water overflowed on the land of plaintiffs on account of the construction of the new dam, but that the *volume of water was increased on the property of plaintiffs by reason of percolation and subterranean flowage from the Cedar River, such percolation being also increased by reason of the raising of the dam, and that the said water so gathered on the property of the plaintiffs by reason of percolation covered a greater area than the normal supply of water present on said premises before the construction of said new dam.*"

Instructions, 3, 4, and 6 are complained of. No. 6 is a cautionary instruction, and within the discretion of the court, to the effect that the jury should decide the case on the evidence, and apply the law as given in the instructions, without sympathy for plaintiff or prejudice against the defendant. We think this objection is without substantial merit, and it will be given no further consideration.

Instruction 3 is, in part, as follows:

"Defendant has no right to build an obstruction which causes the water in the river to back up and stand on, or flow over, plaintiffs' land, unless said right has been obtained by grant, express or implied, from plaintiffs or their grantors. If you find from the evidence, and in the absence of any grant, that defendant's dam has caused the water in the river to back up and to stand on or to flow over the land described in plaintiffs' petition, in a greater amount or to a greater degree than occurred before said dam was built, then the same constitutes an unlawful act on the part of the defendant, and the defendant will be liable for the damages, if any, due to said act. * * * The damages to which plaintiffs are entitled, if any, is the amount of damages which will compensate them for the depreciation in the market value, if any, of plaintiffs' land, due to the act of the defendant in causing water to stand on or to flow upon plaintiffs' said land to a greater extent or to a greater degree than occurred before said dam was built. And you must distinguish between damages due to percolation and seepage, for which defendant is not liable * * *"

On the question of damages the court gave Instruction 4:

"The burden is upon plaintiffs to establish by the preponderance of evidence, etc., each of the following propositions: (a) That plaintiffs' land has been damaged, as claimed in the petition. As to the method of determining the fact as to whether or not any damage at all has been done, you will be instructed later. (b) That the damage so found, if any, was due to the unlawful act or omission of the defendant. As to what constitutes an unlawful act or omission for which defendant is liable, you will be later instructed.

"(2) On the first proposition,—that is, the determination of the amount of damage, if any, the measure of damages to the land is the difference, if any, in market value, etc. * * * If, by the application of this rule, you find that there has been a depreciation in market value, due to the unlawful acts or omissions of defendant, then such depreciation is the measure. However, you must bear in mind that the plaintiff is only entitled, as damages, to that depreciation, if any, which is the legal consequence of an unlawful act or omission on the part of defendant *toward this plaintiff*.

"(3) As to what constitutes an unlawful act, etc.: There is evidence to the effect that some damage has been done to plaintiffs' land by percolation or seepage of water into said land from other lands which defendant had the right to flood, or by percolation and seepage from defendant's mill pond. You are instructed that the flooding of land by defendant, over which the right of flooding has been acquired by grant, is a lawful exercise of defendant's rights, and is not an unlawful act.

"(4) The defendant is liable for the injury to the land in question, if any, only so far as plaintiffs may have proved, by a preponderance of the evidence, that water backs from the dam directly onto the surface of the land in question, and that defendant is in no event to be held liable for injury to land, if any, caused by percolation or seepage of water from adjoining premises upon which defendant has purchased the right to overflow. The maintenance of a mill pond in the river by this defendant is also the exercise of a lawful right, and is not an unlawful act. Therefore, if you find that any damage has been

done to plaintiffs' land on account of percolation or seepage of water from land which the defendant had the right to flood, or on account of percolation or seepage from defendant's mill pond, such damage must be *disregarded* by you.''

Appellant cites *Jenkins v. Hooper Irr. Co.*, 13 Utah 100 (44 Pac. 829) ; *Reed v. State*, 108 N. Y. 407 (15 N. E. 735) ; *Parker v. Larsen*, 86 Cal. 236 (24 Pac. 989, 21 Am. St. 30) ; *Fletcher v. Rylands*, L. R. 1 Exch. 265 ; *Wilson v. City of New Bedford*, 108 Mass. 261 ; and *Pixley v. Clark*, 35 N. Y. 520.

The *Jenkins* case was an action to recover damages to plaintiff's land in consequence of the negligence of the defendants in control of their irrigation canal.

The *Reed* case involved a question of negligent construction of a reservoir by the state, which injured adjacent land by the water percolating from the reservoir. Liability was predicated, in part at least, on a statute of the state making it liable in all cases of damage occurring from the use or management of the canals of the state, or resulting or arising from the negligence or conduct of any officer of the state having charge thereof, etc. The court held that the state was to be regarded as occupying the same position as an individual. The negligence was in failing to render the bed of the reservoir water-tight by not lining it. It was further held that knowledge that the water would flood the land of claimant was immaterial, since they must have known that it would discharge upon somebody's land, and was liable to inflict damage thereto.

In the instant case, we do not understand plaintiffs to bottom their claim on negligence. Neither is there any evidence before us to show that defendant's dam was *improperly* constructed. The two cases just referred to are not directly in point, although some of the discussion may tend to sustain appellants' contention. There is this further difference, too, that neither of the cases is under a dam statute such as we have in this state.

In *Parker v. Larsen*, it was held that one having artesian wells upon his land and so using them that the water therefrom forms in a pool and thence percolates beneath the surface so as to injure the lands of an adjacent proprietor, is answerable in

damages for the injuries thus occasioned. The court said that the defendant was not actuated by any malice or desire to injure plaintiff, but that it was done for the purpose of fully utilizing the whole of his field in growing the crop of alfalfa,—a lawful purpose.

The English rule is stated in *Fletcher v. Rylands*, which is followed in *Wilson v. City of New Bedford* and *Pixley v. Clark*. These cases are directly in point, and sustain appellants' contention. It is so conceded by appellee. The opinion in the *Pixley* case is very long; and under the circumstances, we shall not quote therefrom at length. These cases, and particularly the *Pixley* case, have been referred to and cited in a great many cases, and the rule has been qualified somewhat, but mainly in cases where the question was in regard to the lessening of the flow or quantity of water, and involving the correlative rights in the use by the different owners of the water, and of their own property. We shall see later that the question of the correlative rights of plaintiffs and adjacent landowners to the use of the water under plaintiffs' land, is quite a different proposition from the use of defendant's property in such a way as to injure plaintiffs' land by throwing back and increasing the water thereon, rather than taking it away. A dam below, throwing the water back onto plaintiffs' land, does not involve the use of the water at all. Upper and lower riparian owners had the right to the reasonable use of the water; but this does not authorize the lower owner to dam the stream and destroy the upper owner's property by backwater. Neither have upper owners, ordinarily, the right to use all the water of the stream. This by way of illustration, as to the use of water under plaintiffs' land and use of defendant's dam. The illustration may not be quite analogous to percolating water.

The cases, though there are not many of them directly to the point, quite uniformly seem to make a clear distinction between so draining or lessening the water on the land of one owner, and damming it up and throwing the water back, thus increasing the flow or amount. The cases will be cited later in the opinion. Presumably, land near a river will drain towards the river. By damming the river and raising the water, not

only is the drainage towards the river prevented, but additional water is forced back by pressure.

The *Wilson* case, supra, refers to a number of Massachusetts cases arising under mill acts, although that particular case did not so arise. The cases were thought to be analogous. The *Wilson* case follows the *Fletcher* and *Pixley* cases. In the *Wilson* case, the court said:

"In this commonwealth, complaints under our mill acts have for many years presented cases quite similar to this. Lands are overflowed by mill ponds, and instead of an action at common law, a process is provided by statute for the recovery of damages, quite similar to the process in this case. * * * In *Monson v. Fuller*, 15 Pick. 554, it was decided that damages occasioned by the percolation of water through the earth from the pond to neighboring uplands, and causing them to produce poorer grass or a smaller quantity of grass, could be recovered. In *Fuller v. Chicopee Mfg. Co.*, 16 Gray 46, it was decided that damages occasioned by raising the pond so as to affect injuriously the water of the plaintiff's well were recoverable; and no distinction was made as to whether it affected the well by overflowing or percolation. This principle is just; for the water often injures land which it never overflows; and where the soil is porous, the water may by percolation render a dwelling house uninhabitable, or destroy the value of large tracts of land. Upon the same principle, it was held in *Ball v. Nye*, 99 Mass. 582, that it was actionable to cause filthy water to percolate from the defendant's vault through his own soil and thence into his neighbor's soil, and thus injure his neighbor's well and cellar. In *Pixley v. Clark*, 35 N. Y. 520, the same principle was held in regard to water which percolates through the banks of a reservoir created by erecting a dam across a stream, and damages the plaintiff's land. * * * The cases cited from Vermont are, to some extent, in apparent conflict. * * * They do not seem to distinguish, * * * between natural and artificial causes of injury."

The *Fletcher* and other cases make such distinction. In one of the cases quoted in the *Wilson* case, it was said:

"If water naturally rising in the defendant's land had by percolation found its way down to the plaintiff's mine through

the old workings, and so had impeded his operations, that would not have afforded him any ground of complaint. But that is not the real state of the case. The defendants, in order to effect an object· of their own, brought onto their land, or onto land which for this purpose may be treated as being theirs, a large accumulated mass of water, and stored it up in a reservoir. The consequence of this was damage to the plaintiff, and for that damage, however skillfully and carefully the accumulation was made, the defendants, according to the principles and authorities to which I have adverted, were certainly responsible.''

See, also, as sustaining the *Wilson* case, *Gorham v. Gross,* 125 Mass. 232; *Cahill v. Eastman,* 18 Minn. 324.

The *Pixley* case, and some of the other cases, hold that there is no difference in flooding one's land, whether it is by overflowing or underflowing (percolation). The water reaches the land and injures or destroys its use, in either event. The point is illustrated by Mr. Justice Peckham in the *Pixley* case in this way, substantially: If the point of a knife reaches a man's heart, it is wholly immaterial whether he is stabbed through the breast or under the arm. Appellee's answer to this is that either way would be unlawful. Appellee in argument stresses the point, and the trial court assumed, that, because defendant had, by condemnation or otherwise, acquired the right from landowners other than plaintiffs, to build the dam and back up the water, its action was lawful, and that it was engaged in a lawful enterprise. By condemnation and the payment of damages, defendant would have the right to back up the water in the river by artificial means. The payment of such damages might cover percolation, as well as overflows, so far as such parties are concerned, unless Section 1933, Code of 1897, presents a bar, if unforeseen. But the question arises, would it be lawful as to these plaintiffs? They had never been made parties to condemnation proceedings; it is not claimed that defendant had any grant from them. We think that, as regards plaintiffs, it is as though defendant had not condemned or acquired a grant from other riparian or adjacent landowners. Plaintiffs were not bound by any proceedings as to the others. It may have

been difficult for defendant to determine just what landowners they should make parties to the condemnation proceedings; but they surely cannot, by omitting to make landowners who are or may be injured, parties, acquire any right to flood the lands of persons not made parties. If this could be done, they could flood the land of the plaintiffs with water five feet deep, thus taking their property without compensation or due process. We have recently had a case bearing on this question, where the rule is recognized that condemnation is not exclusive, except where a person is made a party, and that, in some cases, he may sue for damages. *Brown v. Davis County,* 196 Iowa 1341, 1348. See, also, *Hunting v. Curtis,* 10 Iowa 152.

The appellants also cite and rely on the Iowa dam statutes, which will be referred to later in the opinion. We have made an independent investigation, to some extent,—as much as our time will permit,—of cases following and differentiating the *Pixley* case. These, too, will be referred to later.

Appellee cites *Quinn v. Chicago, B. & Q. R. Co.,* 63 Iowa 510, 513; *Moore v. Berlin Mills Co.,* 74 N. H. 305 (11 L. R. A. [N. S.] 284); *Scott v. Longwell,* 139 Mich. 12 (102 N. W. 230); *Wilson v. Hanthorn,* 72 Iowa 451; *Dunsmore v. Central Iowa R. Co.,* 72 Iowa 182; *Fleming v. Lockwood,* 36 Mont. 384 (14 L. R. A. [N. S.] 628); *Howell v. Big Horn Basin Col. Co.,* 14 Wyo. 14 (1 L. R. A. [N. S.] 596, and note); *Bridgeford v. Colorado F. & I. Co.,* 63 Colo. 372 (167 Pac. 963); *Gilbert v. Showerman,* 23 Mich. 448. Appellee appears to rely most strongly on the *Quinn* case, which they claim is an Iowa case in point. It seems to us that the case does not sustain appellee's contention. The court did say, at one point in the opinion:

"On principle, it would seem that the plaintiff ought not to recover for such damages, if they resulted from the lawful and reasonable use by the defendant of its own lot."

But the point decided was that, where one, through some unlawful or unreasonable use or sufferance, allows water to collect upon his lot, and by percolation through the soil it reaches his neighbor's property and renders it less valuable, he becomes liable to the latter for the damages sustained by him on account thereof. Damages were alleged to have been sustained by

reason of an excavation in the earth, and by water collecting and standing therein. There was a verdict for plaintiff, and the cause was reversed because the court did not limit the recovery for a certain time. The court said:

"The evidence shows that such damages, if any, resulted from water percolating through the soil. The rule is well settled that no action can be maintained for the diversion of percolating water, where the act of diversion is done by the owner of the premises where done, and is done in good faith. But the injury complained of in this case did not arise from the diversion of percolating water from where it was wanted, as from a well or spring, but from so collecting water that it reached by percolation to where it was not wanted, to wit, to a cellar, and to the foundation walls of a house. * * * It is to be observed, also, that, during the continuance of the nuisance, the defendant was without excuse in suffering the water to remain. The defendant was under constant obligation to remove it, and the plaintiff had reason to suppose that it would remove it. During that time it was not for the defendant to say that the injury being sustained by the plaintiff was not actionable, because merely incidental to the exercise by the defendant of its own rights. While we think the instruction asked went too far, and was properly refused, the court should, we think, have submitted the question as to whether the defendant became guilty of a nuisance as alleged in the petition, and should have instructed the jury that, in case they so found, they might allow the plaintiff for such injury as her premises sustained from the percolation of water from the excavation after the same became, and while it remained, a nuisance."

In the instant case, while it may be true that defendant was not required to remove its dam, still it was within its power to, by proper proceedings, acquire the right to flood the land of the plaintiffs, or, failing in this, to pay damages. The *Quinn* case was tried upon the theory that defendant was causing a nuisance. Appellant in the instant case does not plead that the dam and pond in question constituted a nuisance. But the facts are stated, and the facts in some respects are similar to those in the *Quinn* case. Under Section 7782, Code of 1924, the dam

may be a nuisance, under some circumstances, or possibly so without the statute. This is not controlling in this case, because defendant already had a license, and yet may have a bearing in the interpretation of prior statutes. And yet Section 7795 of the Code of 1924 requires existing dam owners to secure a permit. In *State v. Close*, 35 Iowa 570, it was held that the dam, when erected in accordance with the statute, will not be a nuisance, but may be so erected and maintained as to become such.

The opinion in the *Quinn* case proceeds on the theory that the nuisance there was one that could be abated, and the damages continuing. The *Quinn* case refers to the reasonable use of defendant's own lot. This is so, too, in other cases cited by appellee; and counsel for appellee argue the proposition as to the reasonable use of its property. We may as well say here that there is no evidence before us on the question as to whether defendant was or was not using its property in a reasonable way. The question seems not to have been raised by the pleadings, or considered by the court in the instructions. The court seems to have determined that question as a matter of law, because defendant had acquired a right to construct its dam by proceeding against certain persons. True, the statute, Section 1930, Code of 1897, required a finding, before the license should issue, that the dam was reasonable and for the public benefit. This would not necessarily show that the use of the dam thereafter was reasonable, and especially as to the use of the water under plaintiffs' premises, if that was the question, or that damming the water was a reasonable use, within the meaning of the cases. The trouble about it is, at this point, that plaintiffs, not having been made parties to condemnation proceedings, are not bound by such a finding. Unreasonable use of water under plaintiffs' premises would not necessarily be negligence. It would simply be using more water than adjacent owners would be entitled to. It is not a question here as to defendants' using more water from plaintiffs' lands than they are entitled to, but whether the defendant, by its dam in the river, may back the water up on the plaintiffs. If there was evidence on the question of reasonable use, then, under cases cited by appellee, that would

be a question for the jury. *Moore v. Berlin Mills Co.*, supra, at
308, 309. See, also, *Franklin v. Durgee*, 71 N. H. 186 (58 L.
R. A. 112). In the *Moore* case, there was evidence "tending to
show that the defendant was using its mill property in a rea-
sonable manner with reference to the plaintiff's land." There
was some question in that case also as to whether defendant
failed to prevent continued percolation after learning of the
injury. There is nothing of that kind in this case, as it comes
to us, and we have seen that some of the cases before cited hold
that the question of knowledge is not material. It appears from
the opinion in the *Moore* case, and other New Hampshire cases
cited therein, that the Supreme Court of that state has repudi-
ated the doctrine of *Fletcher v. Rylands.* In the *Moore* case,
plaintiff sought to recover damages occasioned by water which
defendant, by means of its dam across the river, caused to per-
colate through the ground and into the soil of plaintiff. Be-
tween the river and plaintiff's land, a railroad owned a strip
of land about 100 feet wide, through which the water percolates
before it reaches the plaintiff's sand pit. The court said:

"Hence it follows that the plaintiff cannot complain that
the defendant's dam obstructs the natural flow of the river or
interferes with her riparian rights. So far as she is concerned,
the defendant must be deemed to be the rightful owner of flow-
age rights in the river; and those rights are property rights,
in the enjoyment of which it is entitled to the same protection
accorded to the owners of real estate generally. The retarded
flow of the water in the river produces an artificial reservoir,
which the defendant has the right to maintain and enjoy as its
property; and the case does not materially differ from what it
would be if the defendant had constructed a reservoir on its
own land for some useful purpose, and water from it had, by
percolation, finally reached the plaintiff's land and damaged
her sand pit."

The case is doubtless in point for appellee,—that is, it
would be in point if there were any question in the instant case
as to the reasonable use of defendant's property and knowledge
by it of the injury, as in the *Quinn* case; and yet it does not
appear that there was any statutory provision in that state regu-

lating mill dams.    The opinion refers to the riparian rights of
the plaintiff.    We shall see later that the Iowa statute regulat-
ing rights of dam owners is not limited to riparian owners whose
land abuts on the river.    Furthermore, the proposition in the
latter part of the quotation just made seems to be contrary to
our holding in the *Quinn* case, supra.    The effect of the holding
in the *Moore* case was that the trial court should not have ap-
plied the rule of *Fletcher v. Rylands* without qualification as to
the reasonable use, without negligence, by the defendant of its
property.    In applying this rule, and to sustain the conclusion,
the court quoted from another New Hampshire case to the ef-
fect that it would be a surprise to those engaged in manufac-
turing operations, and to the legal profession, "to hold that,
in case of the breaking away of such reservoirs, there is no
question of care or negligence to be tried," etc.    It occurs to
us that the question of the breaking away of a dam is a different
proposition, and would involve the question of negligence.    The
court in that case also used this language:

"But when there was no fault on his [defendant's] part,
and the damage was not caused by his voluntary and intended
act, or by an act of which he knew, or ought to have known,
the damage would be a necessary, probable, or natural conse-
quence, or by an act which he knew or ought to have known to
be unlawful, we understand the general rule to be that he is
not liable."

This involves three propositions: intention, or knowledge,
or unlawfulness.    In that case there was also involved the ques-
tion of reasonable use of defendant's property.    Building a dam
is voluntary and intentional.

*Scott v. Longwell,* supra, does not sustain appellee's con-
tention.    The point was not decided.    In that case defendants
maintained an artificial mill race.    Plaintiff owned a residence
adjacent thereto.    At certain times, the water from the race
seeped through the banks into plaintiff's cellar, and on her land.
A recovery by plaintiff was affirmed.    The case is somewhat simi-
lar to our *Quinn* case.    The court said:

"The precise obligation imposed by law upon one who col-
lects water in an artificial reservoir is a subject of grave dis-

pute. In *Fletcher v. Rylands,* it was declared that no amount of diligence is a legal excuse, if such water escapes and damages another. The correctness of this doctrine has been much discussed by law writers and courts. It has been approved in Massachusetts (see *Gorham v. Gross,* 125 Mass. 232) ; in Minnesota (see *Cahill v. Eastman,* 18 Minn. 324). It has been disapproved in other states. * * * We need not, however, in this case, as we shall point out, undertake to determine its correctness.''

The court then states the rule as to the care required of a person who collects water in an artificial reservoir, and then said :

"In view of the undisputed fact that such a race was likely to leak, on account of the scraping and cracks, I think that we could safely say, as a matter of law, that defendants were negligent in not taking proper precautions to prevent the water escaping. * * * If defendants were entitled to have the jury charged that their obligation was only that of ordinary care, * * * the instructions preferred are faulty, in that they undertake to state those circumstances, and state them incorrectly, to plaintiff's prejudice.''

In that case defendants also urged that they had a right to do the acts complained of as wrongful, by virtue of a reservation in a deed, and by prescription. The court said that these were affirmative defenses, and not admissible under the general issue. To get the facts of that case before us, we shall quote further from the opinion :

"In our judgment, under the peculiar circumstances of this case, the giving of these requests would have misled the jury and diverted them from the precise question in controversy. To make this clear * * * plaintiff complains of being damaged by the escape of water from the race, not on ordinary occasions, but on two extraordinary occasions. * * * Preceding these, the race had been emptied for several months; on the second of these occasions defendants scraped the bottom of the mill race, and cleaned out the rubbish which had accumulated therein. The undisputed testimony from its millwright is that 'a mill race, when first constructed, is likely to leak, and after it has stood for some time, the mud will work so it will be water-tight.

The effect of drawing off the water would be nearly the same as scraping—as a new construction. So that, after it stands awhile empty, when the water is turned back in, it will seep—water-soak—through, to a certain extent, on account of the ground cracking deep if left dry for some time. If dry a short time and scraped, it would have the same effect as a new construction.' This testimony affords the explanation of plaintiff's injury; for her property was not flooded, except when the water was turned in after the race had for a long time stood empty, on the occasions specified. This testimony is also important as indicating the obligation imposed upon defendants.''

In that case plaintiff's claim was bottomed upon negligence, and the court held that this was sufficiently averred in the petition.

*Fleming v. Lockwood,* supra, was an action to recover damages for injuries to plaintiff's land by seepage from an irrigation ditch. Plaintiff was unsuccessful. The court held that the question of negligence was applicable in such a case. Referring to the maxim that a man is bound so to use his own as not to injure that which belongs to his neighbor, the court said:

''This maxim furnishes, in a general sense, the rule by which every member of society possesses and enjoys his property; but it is not an ironclad rule, without limitations. * * * The doctrine of the maxim is not inconsistent with the rule of law that a man may use his own property as he pleases, for all purposes for which it is adaptable, without being answerable for the consequences, if he is not an active agent in designedly causing injury, if he does not create a nuisance, or if he exercises due care and caution to prevent such injury.''

If the rule in regard to irrigation ditches is applicable to the instant case, then the case is in point for appellee. Some of the cases hold that, even in states where the common law obtains, it will not be followed where conditions are such as to make common-law rules inapplicable. In desert countries and some of our western states, the question of water, or irrigation, is a condition of paramount importance.

In *Bridgeford v. Colorado F. & I. Co.,* supra, it was held that, under the statute of Colorado providing that no person or

corporation shall cause waste water or the water from any ditch, flume, or other place, to flow upon any highway, so as to damage the same, liability of a canal owner for injury caused by seepage from the canal onto a road, is limited to seepage caused by negligent construction, operation, or maintenance. Plaintiff did not allege or prove negligence in these respects. The court said that, eliminating the question of plaintiff's contributory negligence, the purpose of the statute was not to make the owner of a canal absolutely liable for damages occasioned by water seepage, but was limited to negligence in the respects mentioned. This decision, being under the statute, is not in conflict, we think, with cases relied upon by appellant.

The Michigan case, *Gilbert v. Showerman*, supra, is cited to the proposition that, while every person is entitled, generally speaking, to the exclusive and uninterrupted enjoyment of his premises, that right is not absolute and unlimited, and that it is subject to reasonable limitations which have regard to the rights of others, not less than to the general public welfare, and that all property is held subject to these general regulations, which are necessary to the common good and general welfare.

*Dunsmore v. Central Iowa R. Co.*, supra, is cited to the proposition that, in the absence of negligence in the construction or operation, the inconvenience or damage which results to other landed proprietors in the vicinity, whose property is not directly taken, is not the basis of an action for damages which necessarily result from the maintenance and operation of the improvement. That was an action to recover for annoyance from dust and smoke from the operation of a coal chute, wherein plaintiff was not an abutting owner, and where no negligence was shown.

One of the principal contentions of defendant is that the owner of land has the right to construct and maintain a reservoir or dam on his own property, provided only that he is not negligent in so doing; that he has a lawful right so to do. The cases cited by it are, for the most part, to sustain that proposition. It may be conceded that this is the correct rule in some cases. It may be conceded, for the purposes of this case, that one has the lawful right to excavate the earth on his own land

for the purpose of storing water, provided that the reservoir is properly constructed and maintained; and that he will not be liable for escaping water by percolation or otherwise, to the injury of others, provided that he is not negligent, or that the pond or reservoir is not a nuisance. But does this principle apply to the erection of a dam across a river, which backs the water up, to the injury of others? If so, why? The very purpose of erecting a dam is to raise the water above it. Necessarily, this will be the effect; and this is so whether the dam is negligently constructed and maintained, or whether it is done without negligence. The right to construct the dam and throw the water back on others can be obtained only by a grant of some kind. Otherwise, it is unlawful; and it must be that this is so whether the dam is constructed negligently or properly.

We have now referred to all the cases cited by appellee, except the *Wilson* case, in 72 Iowa 451, a decision under our dam statute, which will be referred to in a moment.

A word further at this point in regard to the diminished use of water on one's land and the reasonable use thereof, as affected by seepage or percolation to other land, and the correlative rights of the different owners to such use. We find that, where such doctrine obtains, it is on the theory that the water under one's land is a part of the real estate. This was the doctrine of the earlier cases; but the later cases hold that the doctrine of absolute ownership is not well founded, and that the true rule is that he and other landowners are restricted to a reasonable exercise of their own rights and a reasonable use of their own property, in view of the same rights of others. *Hathorn v. Natural Carbonic Gas Co.*, 194 N. Y. 326 (23 L. R. A. [N. S.] 436). This is in regard to draining one's land by percolation. It was held in that case that a landowner cannot constitutionally be forbidden by the legislature from pumping water or gas arising therefrom, from wells located on his property which reach a common reservoir, absolutely or merely because he thereby interferes with the flow of water from his neighbor's well. The court said that the doctrine of the English cases *in that respect* and *to that extent* was challenged by the New Hampshire court and other courts. See, also, *Meeker*

*v. City of East Orange,* 77 N. J. L. 623 (25 L. R. A. [N. S.] 465, 468); *Katz v. Walkinshaw,* 64 L. R. A. 236. Such is the rule in this state, as we shall see in a moment. 40 Cyc. 626 states that:

"The general rule is that percolating water is subject to the absolute disposition of the owner of the realty where it is found; and there is, therefore, no correlative right on the part of an adjoining owner to have such water reach or flow into his land; nor does the law recognize any such thing as a prescriptive right to the benefit of waters percolating or flowing subterraneously through the land of another. But in a few states, it is considered that an owner may make only a reasonable use of percolating water, having regard to the needs of other owners whose land such water would naturally enter" (citing, on the last proposition, *Barclay v. Abraham,* 121 Iowa 619 [64 L. R. A. 255]; *Burroughs v. Saterlee,* 67 Iowa 396).

The *Barclay* case also involved a question as to a well defined subterranean stream, but held that subterranean waters are *presumed* to be percolating, unless the supply is shown, by the party so asserting, to be from a known and defined stream. It should be so presumed in the instant case. In the *Burroughs* case it is held that, when one in good faith sinks a well on his own land, the owner of a well on adjoining land has no cause of complaint if the water from his well is drawn off or decreased by percolation through the earth; but that, when subterranean water flows in a distinct channel, an adjoining owner of land has no more right to divert its course than if the stream were on the surface of the earth. And so, where plaintiff had an artesian well on his land, and defendants afterwards, by boring on their adjoining land, intercepted the same stream, thereby causing the water to cease flowing in plaintiff's well, but the quantity of water was ample for both parties, and could easily be made to flow at both wells by a simple adjustment of defendants' pipes, *held* that defendants were properly required so to adjust their pipes as not to cut off plaintiff's supply of water, and that an injunction was properly granted to secure that end. No question of backwater in either of those cases.

But it is said in *Reed v. State,* 108 N. Y. 407, at page 414:

"It does not at all follow from the right that a landowner has of lawfully digging on his own land for his own use, even though he thereby interrupts a subterranean current which feeds his neighbor's well or spring, that he has also a right to divert running water into an underground channel and thereby flood his neighbor's land."

Other cases wherein the *Pixley* case is cited, and generally followed (and we think the weight of authority is in harmony with the *Pixley* case), are 1 Eng. Rul. Cas. 272, 273; 18 Eng. Rul. Cas. 725; 23 Eng. Rul. Cas. 809; 40 Cyc. 684; *Kankakee Water Co. v. Reeves*, 45 Ill. App. 285; *Losee v. Buchanan*, 51 N. Y. 476, 481; *St. Peter v. Denison*, 58 N. Y. 416, 423; *Smith v. City of Brooklyn*, 160 N. Y. 357 (45 L. R. A. 664, 665); *Sullivan v. Dunham*, 161 N. Y. 290 (47 L. R. A. 715); *Hathorn v. Natural Carbonic Gas Co.*, already referred to; *Avery v. Vermont Elec. Co.*, 75 Vt. 235 (59 L. R. A. 817, and 878); *Colton v. Onderdonk*, 69 Cal. 155, 159.

Referring to some of the cases just cited, 40 Cyc. 684 lays down the rule that one who stores water for his own purposes must so construct his dam or other works as to preclude injury to the property of others by leakage, seepage, or percolation (citing the *Pixley* case and other cases, among them the *Kankakee Water Co.* case, holding that the question of negligence is immaterial, the duty being absolute). In *Vogt v. City of Grinnell*, 133 Iowa 363, 364, an action for damages for polluting the water of a stream by sewage, it was held that no question of negligence was involved.

In *Losee v. Buchanan*, supra, referring to the *Pixley* case, it is said:

"It matters not whether the damage is occasioned by the overflow of, or the percolation through, the natural banks, so long as the result is occasioned by an improper interference with the natural flow of the stream. * * * The liability was the same, whether the water was dammed up and caused to overflow, or to percolate through the banks of the stream. It was a case of flooding lands by damming up the water of a stream, and the liability of a wrongdoer in such a case has never been disputed."

In the *St. Peter* case it was held that, the defendant having no right to invade the premises, which, for the purposes of this case, were the possession of the plaintiff, it matters not whether or no he made his invasion without negligence.

In *Smith v. City of Brooklyn,* supra, the *Pixley* case is cited and followed, the court saying:

"It is settled by the decisions of the courts of this state, and it is the rule in England, that no one may divert or obstruct the natural flow of a stream for his own benefit, to the injury of another."

That was an action for draining the underground sources of a surface stream. See, also, *Forbell v. City of New York,* 164 N. Y. 522 (51 L. R. A. 695), an injunction case.

In *Sullivan v. Dunham,* the *Pixley* case is cited and followed. That was a case where one who exploded a blast upon his own land thereby caused a piece of wood to fall upon a person lawfully traveling in a public highway. The defendant was held liable, although the blast was fired for a lawful purpose and without negligence. A possible distinction because blasting is intrinsically dangerous; and yet defendant was blasting lawfully,—not a question of storing a dangerous substance.

*Avery v. Vermont Elec. Co.* was a condemnation case, where a petition for appointment of commissioners to assess damages to be paid for the flooding of property under the flowage acts was dismissed. It involves the question of the right to condemn. The court also held that the right of the legislature to regulate the rights common to riparian owners does not empower it to permit a lower owner to dam the water back on the upper owners of the land when necessary to do so to develop the full power of the stream, and require the upper owner to take his share of the value of the stream in money; and that the flowing of land by a dam for manufacturing purposes is a taking, within the meaning of the constitutional provision regulating the taking of land by right of eminent domain. The *Pixley* case is referred to in the note at page 878.

In *Colton v. Onderdonk,* plaintiff recovered damages which she claimed defendant had caused to her dwelling house while

he was engaged in blasting rock in grading another lot adjoining plaintiff's. The court said:

"It would make no material difference whether that damage, resulting proximately and naturally from the act of blasting by the defendant, was caused by rocks thrown against Mrs. Colton's dwelling house or a concussion of the air around it, which had either damaged or destroyed it. The defendant seems * * * to claim that he had a right to blast rocks with gunpowder on his own lot * * * even if he had shaken Mrs. Colton's house to ruins, provided he used care and skill in so doing, and although he ought to have known that by such act, which was intrinsically dangerous, the damage would be a necessary, probable, or natural consequence. But in this he is mistaken" (citing the *Pixley* case).

Without citation of the *Pixley* and like cases, it has been held that, in many instances where there is no recovery at common law, the legislature has provided indemnity for injuries suffered by abutters and others. Thus, under a tunnel statute, the owner of abutting land whose cellar was flooded, owing to the unauthorized removal of a bulkhead, was held entitled to compensation. *Fifty Associates v. City of Boston,* 201 Mass. 585 (88 N. E. 427). See, also, *MacGinnis v. Marlborough-Hudson Gas Co.,* 220 Mass. 575 (L. R. A. 1915 D 1080). See, also, *Brennan Const. Co. v. Cumberland,* 29 App. D. C. 554 (15 L. R. A. [N. S.] 535, District Court of Columbia, Court of Appeals), where it is held that one who stores upon his premises, near a navigable river, large quantities of oil, the escape of which is bound to do the greatest amount of damage and injury to persons using the stream, is liable for the injury done in case of an escape of the oil, although it occurs without any negligence on his part. While that case has reference to escape of oil, there is a note at page 541 in regard to the escape of water, which cites *Fletcher v. Rylands,* supra.

In the instant case, the agreed statement of facts states that license had been duly granted to defendant to construct the dam, as provided in Chapter 1, Title X, of the Code of 1897, but does not state how otherwise it had been granted the right. In that chapter, Section 1921, Code of 1897, it is provided that:

"Any person who owns land on one or both sides of a water-course, and desires to erect or heighten any dam thereon, or construct or enlarge a race therefrom, for the purpose of propelling any mill or machinery erected or to be erected thereon, by the water thereof, may file in the office of the clerk of the district court of the county in which such mill or machinery is, or is to be erected, a petition, designating himself as plaintiff and the owners of lands affected thereby as defendants, and describing with reasonable certainty the locality where such mill or machinery is or is to be erected, with that of such dam or race, and also of the lands that will be overflowed or otherwise affected thereby."

Following sections provide for impaneling a sheriff's jury, and that the jury shall view the lands described in the petition and appraise the damages each of defendants will sustain by reason of such lands' being overflowed, or otherwise injuriously affected. Section 1927 provides that, when the report of the jury is filed, the clerk shall issue an order directing the defendant to appear at the next term of court and show cause why a license should not be granted, etc. Section 1928 provides for filing objections. Under Section 1930, license may be granted if the court shall find that the license is reasonable and for the public benefit, etc. Section 1933 reads:

"No proceedings under this chapter shall bar an action which could have been maintained if this chapter had not been enacted, unless the prosecution or action was actually foreseen and estimated upon the inquest."

Another section provides for bringing in another party who has not been made a party, and whose land is affected, at any time before final decree.

We must assume that whatever rights appellee has in the premises are under this chapter. It had the right to make plaintiffs parties. Had this been done, and notice given them, with an opportunity to be heard before the license was granted, plaintiffs would have been bound by the assessment. It will be observed that the statute does not limit the persons to be made parties, to those owning land abutting on or touching the river; neither does it limit the question to lands which will be over-

flowed, but to lands which will be "otherwise affected thereby." There can be no question but that plaintiffs' lands were injuriously affected by water which percolated to their lands by reason of the dam. That is conceded.

A construction of Code Section 1921 was involved in *Wilson v. Hanthorn*, 72 Iowa 451, cited by appellee, and in other cases not cited. It was there held substantially that a person seeking a license under the statute to erect a dam must make all persons parties whose lands "will be overflowed or otherwise affected thereby;" but this means only those persons whose damages are the direct result of the erection of the dam under the circumstances existing at the time; and when this has been done, and such persons have been compensated, the licensee may proceed with safety under his license, and he cannot afterwards be held liable for damages subsequently accruing to other lands through a concurrence of contingent causes which could not be foreseen, and whose results could not be estimated at the time of procuring the license. That was an action in equity to abate a mill dam, and to recover damages. The question of percolation was also in the case, but not decided directly. It was intimated, however, that damages might be recovered because of percolation. On this point the court said:

"The question of the percolation is not quite as easy to be disposed of as a question of fact. We are not prepared to say that, if the soil had become saturated by reason of percolation, standing water, from whatever source it might come, would not less readily be absorbed, and, if not absorbed, that injury might not be sustained. But, in the view which we have of the statute under which the license was obtained, neither the question of fact as to the percolation nor as to the overflow is vital to the case."

On the question as to what landowners should be made parties to condemnation proceedings, the court said:

"When a person desires to utilize a water power and erect a mill, there should be some way in which he can proceed with safety. The law allows private property to be taken in consideration of the public benefit resulting from a mill. It points out how land may be taken and a license procured. The per-

son seeking a license must file a petition giving the names of the persons whose lands 'will be overflowed, or otherwise affected thereby.' The question presented is·as to what lands are contemplated as affected. Of course, those are contemplated which will be affected directly by the dam. Injuries thus accruing can be foreseen with such reasonable certainty that it is practicable to bring the landowners in, and make them defendants, and ascertain their damages. But how about those whose lands are not directly affected, and never can be affected, except by the concurrence of contingent causes which cannot be foreseen, and much less practically estimated?''

Under the facts in that case, it was held that plaintiff was not entitled to relief. We understand the court to have ruled as it did because of the facts. Some of the conditions increasing the backwater occurred after the dam was constructed. It appeared that plaintiff's land was about four miles distant from the dam in a straight line, and six miles by the course of the river, and about three fourths of a mile distant from the river at the nearest point. There was no complaint for fifteen years. During the last few years, the bed of the river had been elevated somewhat by the deposit of sediment. The land for some distance from the river had become wetter than formerly, and there had been places where it had been impracticable at times to raise crops. Plaintiff attributed this in part to overflow from the river, and in part to percolation through the soil. It did not appear that the dam, at the time it was erected, caused any damage to the plaintiff's land. At the time of the condemnation proceedings, it was assumed that the land would not be overflowed or otherwise affected, and the owner was not made a party. There was a slough through plaintiff's land. The water in the slough was about three feet higher than the water in the dam, and plaintiff's land was three feet higher than the water in the slough. The court held that the plaintiff's land could not have been overflowed by reason of the dam. Plaintiff's theory was that the injury complained of was the result of natural causes, occurring within the last six years, which causes ·were rendered injurious by reason of the dam erected fifteen years before. He affirmatively disclaimed that the land was

injured by the erection of the dam alone, without the concurrence of other causes, and he did this to avoid the defendant's plea of the statute of limitations.

In the instant case, there is an entire lack of evidence on this subject. Practically all shown is that defendant had acquired a grant to flood lands of others, and that water was backed up, and percolated through the soil to plaintiffs' land. There is no showing as to levels, character of the soil, defendant's knowledge of such things, at and before the condemnation, or anything else bearing on the question as to whether at that time defendant could have foreseen that plaintiffs' lands would be affected. Can it be said, in every case, or in this case, in the absence of evidence, that, because plaintiffs were not made parties to the proceedings, defendant at the time could not foresee that omitted lands would be affected, and therefore it was not necessary to make them parties? We think not. We find that ordinarily, and in the absence of statute, a license regularly issued is a defense to any proceeding to abate or remove the dam, or for damages to riparian owners, and a bar to the granting of any subsequent application for a similar privilege which would destroy the rights already accorded. But to have this effect, it is necessary to show a strict compliance with all the directions of the statute, and a valid order. 40 Cyc. 667. Doubtless we should presume, under the record in this case, that the statute was complied with; and yet, as before stated, there is no evidence bearing on the question as to conditions, and whether it could be foreseen that plaintiffs' lands would be affected. We shall refer to our own statute in a moment, as to whether the proceedings are a bar.

In *Fleming v. Hull*, 73 Iowa 598, 602, the constitutionality of the dam statutes was questioned. The court said:

"If such statutes were enacted now for the first time, it is possible, if not probable, that they could not be sustained."

And at 601:

"If the statute is unconstitutional, the whole proceeding is void, and no right whatever was or can be obtained thereunder."

If the statute is void, defendant has no grant. This question is not argued, and we shall give it no further consideration.

Section 1933, before quoted, was not considered in the case of *Wilson v. Hanthorn,* supra. It seems to us it has a very important bearing. As we read this statute, the condemnation proceedings are not a bar to plaintiffs unless the action was actually foreseen and estimated upon the inquest. As said, there is no evidence on the question as to whether it was foreseen, or whether the circumstances were such as that it should have been foreseen. In *Lummery v. Brady,* 8 Iowa 32, decided under this statute, complainants had been awarded compensation by the sheriff's jury. Thereafter, complainants brought an action at law, and recovered other damages. They then brought an action in equity, to restrain defendants from flowing back the waters of the river by their dam upon plaintiffs' lands. The court held that plaintiffs were not entitled to an injunction. The court said:

"The damages awarded to complainants may, as alleged by them, not have been foreseen and estimated by the jury on the inquest. In such event, the judgment for damages is no ground for an injunction against the owners of the mill dam; it does not affect their rights under their license; but is to be considered rather as compensation for injuries not foreseen or estimated by the jury upon the inquest, as permitted by the statute, and to be recovered in such action at law; and, in this view, may be rather considered as a confirmation of the license granted to defendants.''

See, also, *Watson v. VanMeter,* 43 Iowa 76.

We have gone into the matter more extensively than intended. Without further prolonging the opinion, we think the action is more like an action for nuisance; and that the *Pixley* and like cases relied upon by appellant are the better reasoned, and more numerous; and that the trial court erroneously assumed, as a matter of law, that defendant had the lawful right. Under the record as made, the question as to damages from percolation should have been submitted to the jury.—*Reversed.*

ARTHUR, C. J., and EVANS, STEVENS, FAVILLE, and VERMILION, JJ., concur.