JACK LUBIN and CELE LUBIN, appellees, v. CITY OF IOWA CITY, appellant.

No. 51346.

(Reported in 131 N.W.2d 765)

384

DECEMBER 15, 1964.

REHEARING DENIED FEBRUARY 9, 1965.

Wayne C. Collins of Shuttleworth & Ingersoll, of Cedar Rapids, for appellant.

Arthur O. Leff of Leff & Leff, of Iowa City, for appellees.

STUART, J.—Plaintiffs brought this action in three counts against the city seeking damages for injuries sustained when a city water main broke, flooding the basement of plaintiffs' store and damaging merchandise stored there. Count I was based on the doctrine of liability without fault announced in Fletcher v. Rylands (1866) L. R. 1 Ex. 265, Rylands v. Fletcher (1868) L. R. 3 H. L. 330. Count II was founded upon the doctrine of res ipsa loquitur. Count III contained allegations of specific acts of negligence. The trial court submitted to the jury only res ipsa loquitur and the specific charge of failing to act promptly in turning off the water. The jury returned a defendant's verdict on both counts. The trial court, on plaintiffs' motion, granted a new trial on the ground that the verdict failed to do substantial justice. Defendant has appealed from the trial court's ruling on the motion for new trial.

██ I. The trial court has a broad, but not unlimited, discretion in determining whether the verdict effectuates substantial justice between the parties. We are more reluctant to interfere with a ruling which grants a new trial than one in which it is denied and will do so only upon a clear showing of abuse of discretion. Warrender v. McMurrin, 256 Iowa 617,

128 N.W.2d 285; Lantz v. Cook, 256 Iowa 409, 127 N.W.2d 675; Larew v. Iowa State Highway Commission, 254 Iowa 1089, 120 N.W.2d 462; Coleman v. Brower Construction Co., 254 Iowa 724, 119 N.W.2d 256; In re Estate of Goretska, 234 Iowa 1080, 13 N.W.2d 432. However, such ruling must be founded upon sound judicial discretion and granted for reasons which fairly appear in the record. Mazur v. Grantham, 255 Iowa 1292, 125 N.W.2d 807; Jacobsen v. Gamber, 249 Iowa 99, 86 N.W.2d 147; Copeland v. Junkin, 198 Iowa 530, 199 N.W. 363. The court has no right to set aside a verdict just because it might have reached a different conclusion. Warrender v. McMurrin, supra.

In ruling upon the motion for new trial, the trial court was of the opinion there was no error except possibly the refusal to submit the absolute liability theory to the jury. He then holds: "that no substantial, or any, justice was administered. The plaintiffs under the facts did nothing which contributed to their substantial injury to their property in any manner or degree. The defendant was in exclusive control of the instrumentality which caused the injury, and the occurrence of such (breaking of water main) in the ordinary course of things would not happen if reasonable care had been used."

The trial court does not point to anything in the record to support his reason for granting a new trial. Our examination of the record did not disclose any matters from which it could be inferred the decision did not administer substantial justice under the law as submitted to the jury. The statement in the court's ruling is essentially based upon his disagreement with the jury's finding on res ipsa loquitur. There was evidence from which the jury could find that the break did occur without negligence on the part of the defendant.

Pipe with an estimated life of 100 years had been in the ground 80 years. There was no evidence of a previous break in this particular part of Iowa City. There was no possibility of inspection except when the pipe was exposed for other purposes. Plaintiffs had made a service connection on one side of the break and a third party had made a service connection on the other side. There was evidence that the ground under these connections was soft and that the break could have been caused by the

resulting "beaming action". There was evidence that breaks could be caused by the shifting of the earth, electrolytic action and overhead traffic. The record does not show any reason which would justify the trial court in exercising his discretion to grant a new trial in the interest of substantial justice. The fact that it believes a different result should have been reached is not sufficient.

The trial court recognized this when he invited us to reverse his refusal to submit the case on the theory of absolute liability, saying: "I am satisfied that the only protection that a property owner may, with some degree of certainty, have, is the absolute liability rule, and it should be adopted by the courts of this country. I respectfully ask the Supreme Court of Iowa to reverse me in this case for failure to submit said rule, and to give to the people of this state a genuinely true rule in this type of case, to provide for substantial justice."

II. As "we will affirm the ruling on any sufficient ground shown by the record even though the ruling was placed upon different reasons", McMaster v. Hutchins, 255 Iowa 39, 48, 120 N.W.2d 509, 514, we have examined the record to determine if the motion for new trial should have been granted for one of the specific errors claimed in the motion. We agree with the trial court that there was insufficient evidence to submit the three other allegations of specific negligence to the jury. We did not find anything in the record to justify a reversal on the other grounds urged, except for the failure of the trial court to submit the case on the theory of strict liability.

III. Plaintiffs argue the facts in this case are such that the doctrine of Fletcher v. Rylands imposing strict liability, or liability without fault, should be applied. This leading and controversial case was decided in England in 1866 and has been the subject of much discussion by the legal scholars ever since. Bohlen, Studies in the Law of Torts, pages 344–440; Prosser, Law of Torts, Second Ed., 329–349. There a millowner was held liable for damages sustained when water broke through the bottom of a pond into some unused mine shafts and flooded plaintiff's mine through connecting passages. No negligence was found. The facts did not satisfy the technical requirements of

either trespass or nuisance. Justice Blackburn in the Exchequer Chamber said:

"We think that the true rule of law is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape." Fletcher v. Rylands (1866), L. R. 1 Ex. 265, 279, 280.

On appeal to the House of Lords this broad statement was limited to a "nonnatural" user of the land as distinguished from "any purpose for which it might in the ordinary course of the enjoyment of land be used". Rylands v. Fletcher (1868), L. R. 3 H. L. 330, 338.

While this doctrine was readily followed in England, it is generally thought that it has not been widely accepted in the United States. However, Prosser in 1955 found 20 jurisdictions including Iowa, which have accepted it in name or principle. Law of Torts, pages 332, 333. In many other jurisdictions strict liability has been imposed on other theories for damages sustained when an escaping substance or force has invaded the real estate of another.

Many recent cases have applied strict liability on the theory of trespass. Casanover v. Villanova Realty Co. (1948), Mo. App., 209 S.W.2d 556, 559 (surface water and sediment case upon land by regrading); Martin v. Reynolds Metals Co. (1959), 221 Ore. 86, 342 P.2d 790 (fluoride particles escaping from aluminum reduction plant); Hall v. De Weld Mica Corp., 244 N. C. 182, 93 S.E.2d 56 (invisible particles of silicon dioxide); United Electric Light Co. v. DeLiso Construction Co., 315 Mass. 313, 318, 52 N.E.2d 553 (grout escaping through the earth); Sheppard Envelope Co. v. Arcade Malleable Iron Co. (1956), 335 Mass. 180, 138 N.E.2d 777 (soot and grit); Gregg v. Delhi-Taylor Oil Corp. (1961), 162 Tex. 26, 344 S.W.2d 411 ("cracking sand" under surface to produce more natural gas); Reynolds Metals Co. v. Lampert (1963), 316 F.2d 272 (fluoride particles); Mairs v. Manhattan Real Estate Assn. (1882), 89 N. Y. 498 (water seepage); Loe v. Lenhardt (1961), 227 Ore. 242, 362 P.2d 312 (spraying of chemicals from airplane held an extrahazardous activity).

Strict liability has frequently been imposed on the theories of absolute nuisance or private nuisance. Prosser, Law of Torts, pages 336, 337, 399, 400, 405 to 416, and cases cited. United Electric Light Co. v. DeLiso Construction Co., supra, 315 Mass. 313, 52 N.E.2d 553, 557.

However, most of the broken water main cases have been founded upon negligence. Res ipsa loquitur was resorted to in Kind v. City of Seattle, 50 Wash.2d 485, 312 P.2d 811; Anderson Stores Co. v. Boise Water Corp., 84 Idaho 355, 372 P.2d 752; Koch Brothers Bag Co. v. Kansas City (1958), 315 S.W.2d 743; Adam Hat Stores, Inc. v. Kansas City, Mo. App., 307 S.W.2d 36, 316 S.W.2d 594; and Quigley v. Village of Hibbing, 268 Minn. 541, 129 N.W.2d 765. Delay in shutting off the water was used as a basis of liability in Cole Drug Co. of Massachusetts v. Boston, 326 Mass. 199, 93 N.E.2d 556; Bond Pharmacy, Inc. v. City of Cambridge, 338 Mass. 488, 156 N.E.2d 34; Iver Johnson Sporting Goods Co. v. City of Boston, 334 Mass. 401, 135 N.E.2d 658; and National Mattress Co. v. City of Youngstown (1957), 78 Ohio L. Abs. 526, 153 N.E.2d 439. Failure to properly construct or maintain was the basis of liability in Yearsley v. City of Pocatello, 71 Idaho 347, 231 P.2d 743; Felsway Shoe Corp. v. Louisville Water Co., 311 Ky. 259, 223 S.W.2d 875. It was held that there was insufficient evidence of negligence in Stein v. Newark, 25 N. J. Misc. 170, 52 A.2d 66; Grace & Co. v. Los Angeles, 278 F.2d 771; A. DaPrato Co. v. City of Boston (1956), 334 Mass. 186, 134 N.E.2d 438.

In Kind v. City of Seattle, supra, the trial court and one appellate judge felt the rule of Rylands v. Fletcher should be applied to water main cases, but the decision of the majority turned upon res ipsa loquitur and the question was not decided. Minnesota has applied strict liability to broken water mains. For more than 50 years prior to its opinion so holding in Bridgeman-Russell Co. v. City of Duluth (1924), 158 Minn. 509, 197 N.W. 971, Minnesota had applied the rule to reservoirs. Cahill v. Eastman, 18 Minn. 324, 10 Am. Rep. 184; Wiltse v. City of Red Wing, 99 Minn. 255, 109 N.W. 114. The court found no practical distinction between a leak in a reservoir and a break in a twenty-inch main leading therefrom, saying: "The duty to

keep the destructive agency confined is as great in the one case as in the other." Page 510 of 158 Minn., page 972 of 197 N.W. The court distinguished a principal main from a "service pipe leading into plaintiff's premises". In the recent case of Quigley v. Village of Hibbing (1964), 268 Minn. 541, 129 N.W.2d 765, the Supreme Court of Minnesota pointed to this distinction and refused to apply the doctrine to a broken four-inch cast-iron service main leading into premises damaged by flooding. We do not know whether the Minnesota court would extend the application of the rule to other mains which are not service lines.

We have not been asked, prior to this case, to apply strict liability to broken water mains. We have, however, applied strict liability in other instances. The doctrine of Fletcher v. Rylands, supra, was discussed and approved in the case of percolating water or water seepage in Healey v. Citizens Gas & Electric Co., 199 Iowa 82, 87, 201 N.W. 118, 38 A. L. R. 1226. Strict liability has also been imposed on the theory of nuisance (Ryan v. Emmetsburg, 232 Iowa 600, 4 N.W.2d 435) and trespass. Watson v. Mississippi River Power Co., 174 Iowa 23, 156 N.W. 188, L. R. A. 1916D 101.

The Ryan case approved of an action for damages from a continuing nuisance alleged to have been created by odors from a sewage disposal plant. There were no allegations of negligence, pages 602 to 606 of 232 Iowa, pages 438, 439 of 4 N.W.2d. In that case a distinction was drawn between a private nuisance and a trespass, which we say "comprehends an actual physical invasion by tangible matter." This definition would seem to include the present situation. In the Watson case recovery was allowed for damages to a building caused by the concussion of air and vibrations of the earth brought about by blasting operations on the theory of trespass through the use of an inherently dangerous instrumentality. There was no proof of negligence and the case was tried on the theory of liability without fault. Some of the general language contained in that case is both enlightening and pertinent. We say at pages 31, 32 of 174 Iowa:

"The employment of force of any kind which, when so put in operation, extends its energy into the premises of another to their material injury, and renders them uninhabitable, is as

much a physical invasion as if the wrongdoer had entered thereon in person and by overpowering strength had cast the owner into the street."

In the recent case of Pumphrey v. J. A. Jones Construction Co., 250 Iowa 559, 561, 94 N.W.2d 737, 738, which was also a blasting case, we recognize that we have accepted the doctrine of liability without fault when one "uses on his own lands something inherently dangerous and likely to damage his neighbor's property."

In Healey v. Citizens Gas & Electric Co., 199 Iowa 82, 201 N.W. 118, 38 A. L. R. 1226, Fletcher v. Rylands was discussed and approved and other cases which had applied strict liability were exhaustively reviewed. The defendant had obtained the required permit to raise its dam across a stream to increase its capacity to produce electricity. It had condemned the land included in the increased water reservoir. Plaintiff's land did not lie next to the river and was not condemned, however the higher-water level caused water to seep through the ground and come to the surface on plaintiff's land damaging it and his crops. In holding that the question of damages from the percolating water should have been submitted to the jury, we said: "(W)e think the action is more like an action for nuisance; and that Pixley (Pixley v. Clark, 35 N. Y. 520) and like cases relied upon by appellant (including Fletcher v. Rylands stated to be directly in point, page 88) are the better reasoned, and more numerous * * *." Page 108. (Words in parentheses are ours.)

Whether we say the invasion of plaintiffs' property by water escaping from defendant's broken water main constitutes a trespass or nuisance or results from an extrahazardous activity as defined in Restatement of Torts, section 520, or is an application of the doctrine of Fletcher v. Rylands, or that the practice of leaving pipes in place until they break is negligence per se, we believe the facts in this case disclose a situation in which liability should be imposed upon the city without a showing of negligent conduct.

It is neither just nor reasonable that the city engaged in a proprietary activity can deliberately and intentionally plan to leave a water main underground beyond inspection and mainte-

nance until a break occurs and escape liability. A city or corporation so operating knows that eventually a break will occur, water will escape and in all probability flow onto the premises of another with resulting damage. We do not ordinarily think of water mains as being extra-hazardous but when such a practice is followed they become "inherently dangerous and likely to damage his neighbor's property" within the meaning of Pumphrey v. J. A. Jones Construction Co., supra. The risks from such a method of operation should be borne by the water supplier who is in a position to spread the cost among the consumers who are in fact the true beneficiaries of this practice and of the resulting savings in inspection and maintenance costs. When the expected and inevitable occurs, they should bear the loss and not the unfortunate individual whose property is damaged without fault of his own.

The Circuit Court of Appeals, Fourth Circuit, applied similar reasoning in Norfolk & Western Railway Co. v. Amicon Fruit Co. (1920), 269 F. 559, 561, 14 A. L. R. 547, 550, in which a private company was held liable for damages caused by recurring leaks in a sixteen-inch cast-iron pipe although "the pipeline was built in the best manner and maintained at all times with due care, so that defendant was not negligent in those respects". The court said: "We are not here dealing with an accident, an unexpected and unlikely happening, but with the continuous or frequently recurring results of what may be called the normal operation of this pipeline, though properly constructed and carefully maintained. It is not a question of negligence, in the ordinary sense of that term. Defendant in effect says that it cannot keep its pipeline from leaking and therefore is not liable for the consequences. In our judgment the position is plainly untenable." 269 F. 562, 14 A. L. R. 551.

While the leak occurring here was not continuous or frequent, it was certainly not accidental or unexpected and was within the normal operation of the water system.

The reasons stated by the Supreme Court of Minnesota in adhering to the doctrine of Rylands v. Fletcher in Bridgeman-Russell, supra, are appropriate here.

"Congestion of population in large cities is on the increase.

This calls for water systems on a vast scale either by the cities themselves or by strong corporations. Water in immense quantities must be accumulated and held where none of it existed before. If a break occurs in the reservoir itself, or in the principal mains, the flood may utterly ruin an individual financially. In such a case, even though negligence be absent, natural justice would seem to demand that the enterprise, or what really is the same thing, the whole community benefited by the enterprise, should stand the loss rather than the individual. It is too heavy a burden upon one. The trend of modern legislation is to relieve the individual from the mischance of business or industry without regard to its being caused by negligence." 158 Minn. 509, 511, 197 N.W. 971, 972.

We see no logical distinction between mains leading from a reservoir and other mains. Damage may utterly ruin an individual financially in either case.

If the city accepts the advantages of lower maintenance costs and other benefits which result from its practice of burying long lasting cast-iron pipes six feet underground beyond any reasonable opportunity to inspect and intentionally leaves them there until breaks began to occur, it should also expect to pay for the damages resulting from such practice as a cost of its doing business in this manner.

The result reached here seems to be in line with modern trends. Legal scholars, with justification, accuse the courts of tending to fix tort liability, not by determining which party is at fault but by deciding which party can best stand the loss. 1963 Annual Survey of American Law, page 363. While we cannot accept such a basis for determining liability in most tort cases, it seems to be appropriate here. Most jurisdictions which rejected Rylands v. Fletcher did so during that period of time when our country was still young and expanding.

"Dangerous enterprises, involving a high degree of risk to others, were clearly indispensable to the industrial and commercial development of a new country and it was considered that the interests of those in the vicinity of such enterprises must give way to them, and that too great a burden must not be placed upon them. With the disappearance of the frontier, and the

development of the country's resources, it was to be expected that the force of this objection would be weakened, and that it would be replaced in time by the view that the hazardous enterprise, even though it be socially valuable, must pay its way, and make good the damage inflicted. After a long period during which Rylands v. Fletcher was rejected by the large majority of the American courts which considered it, the pendulum has swung to acceptance of the case and its doctrine in the United States." Prosser, Law of Torts, page 332; see also Bohlen, Studies in the Law of Torts, pages 367 to 370.

Appellant cites three cases in which the rule of Rylands v. Fletcher has been rejected in broken water mains. Interstate Sash & Door Co. v. City of Cleveland (1947), 148 Ohio St. 325, 74 N.E.2d 239; Midwest Oil Co. v. City of Aberdeen (1943), 69 S. D. 343, 10 N.W.2d 701; A. J. Brown & Son, Inc. v. City of Grand Rapids (1933), 265 Mich. 465, 251 N.W. 561. In none of these cases does it appear whether the city engaged in the practice of leaving the water mains in place until a break would occur. In any event, the courts gave no indication that such a practice was considered of importance in the decisions. We cannot justify a decision which would permit one party to engage in an activity upon his land that will inevitably result in an invasion of the land of another with resulting damage and escape liability for that damage.

IV. Defendant suggests that the record here does not justify the application of strict liability even if we accept it in water main cases. It claims the injury resulted either from a "vis major" or the conduct of the plaintiffs. Evidence was introduced that breaks were sometimes caused by the shifting of the earth. No authorities are furnished by either party to aid in deciding whether this is sufficient to constitute a "vis major". There is also evidence that the ground was soft under the connections to service line of the plaintiffs and that of another party on each side of the break and that resulting beaming action could have caused the break. Neither piece of evidence is so conclusive as to require us to hold the defendant not liable as a matter of law. The defendant is entitled to have all valid defenses to strict liability which are supported by the evidence submitted to the

jury. We believe the evidence is sufficient to require the court to submit the question of the fault of the plaintiffs to the jury. We do not pass upon the defense of "vis major".

V. Defendant contends that the court erred in admitting evidence of the value of damaged goods that did not accurately reflect the reasonable replacement cost, which is the measure of damages. International Harvester Co. v. Chicago, Milwaukee & St. Paul Ry. Co. (1919), 186 Iowa 86, 172 N.W. 471. A list of the damaged merchandise with its marked retail prices was introduced into evidence. The total was reduced by 33⅓ percent which, according to the testimony, is the average markup in this type of operation. A handling charge of six percent was added, making a final figure of $4963.32. The owner also testified the fair and reasonable replacement cost on the damaged merchandise was $4963.32.

The defendant claims the proper evidence of replacement cost was the actual replacement cost for each item on the day of the damage. This, of course, would be the most nearly accurate figure on replacement costs, but such exact proof is not required. If the proof furnishes a reasonable basis from which the amount of damages may be inferred, it is sufficient. Natkin & Co. v. R. F. Ball Construction Co., 255 Iowa 1156, 123 N.W.2d 415. The evidence here was sufficient to provide a reasonable basis from which reasonable replacement cost could be inferred.

VI. In view of our holding in Division III imposing strict liability, we need not decide whether res ipsa loquitur should have been submitted to the jury.

For the reasons set forth in Division III we affirm the trial court's ruling and remand the case for new trial in accordance herewith.—Modified, affirmed and remanded.

All JUSTICES concur except LARSON, J., who takes no part, and HAYS, J., not sitting.