**FARMERS BUTANE GAS CO., INC.,**
Appellant,

v.

**Dr. Barvo WALKER, Appellee.**

No. 5211.

Court of Civil Appeals of Texas,
Waco.

Jan. 18, 1973.

Rehearing Denied Feb. 8, 1973.

Gibbins & Spivey, Bob Gibbins, Austin, for appellant.

Hooper, Kerry, Chappell & Broiles, John G. Street, Ft. Worth, for appellee.

OPINION

JAMES, Justice.

This is a venue matter involving Subdivision 9a of Article 1995, Vernon's Annotated Texas Civil Statutes. Plaintiff-Appellee Dr. Barvo Walker brought this suit

against Defendant-Appellant Farmers Butane Gas Co., Inc., in the District Court of Bosque County, Texas, for damages to his ranch house caused by an explosion and fire, all of which occurred shortly after Defendant-Appellant had delivered butane gas and placed it in Plaintiff-Appellee's butane tank. Defendant-Appellant filed its plea of privilege to be sued in Hamilton County, Texas, the county of its legal residence. Plaintiff-Appellee having controverted Defendant-Appellant's plea of privilege, the trial court after hearing overruled the plea of privilege, from which Defendant-Appellant appeals. We affirm.

Plaintiff-Appellee Dr. Barvo Walker is a dentist who resides in Tarrant County, Texas. In 1965 he and his wife purchased a ranch in Bosque County, Texas, upon which was located an old residence house which the Doctor and his family used on weekends and in the summer. About twelve feet from the house was a butane tank buried in the ground except for the dome cover, under which cover were the filler, vapor return outlet, and other fittings more particularly hereinafter described. The butane tank was connected by pipe to the cookstove in the kitchen. The butane tank was in place at the time the Walkers bought the ranch in 1965, and had apparently been there several years prior thereto. There is no testimony as to how long it had been there, except that the caretaker, Walter Allen Dodson, estimated it had been there twelve to fifteen years.

Walter Allen Dodson of Iredell, Texas, sixty-eight years of age, was employed by the Walkers as caretaker of the ranch, and had been employed in that capacity ever since the Walkers bought the ranch in 1965. Dodson usually went to the ranch house every day. Mrs. Walker called Dodson and told him that they were coming to the ranch to spend Thanksgiving, and asked him to have plenty of firewood chopped. This reminded Dodson that the butane supply was low, and before eight o'clock on the morning of November 25, 1970, Dodson telephoned Farmers Butane

at Hico, Texas, and ordered 100 gallons of butane gas to be delivered to Dr. Walker's butane tank. Dodson was told that the butane would be delivered shortly. While waiting for the Farmers Butane truck to arrive, Dodson went into the kitchen and turned on one (or possibly two) of the burners of the cookstove and warmed his hands. The pilot light on the cookstove was burning that morning as it customarily did all the time. The delivery truck arrived at the ranch house about 8:30 AM: whereupon Dodson turned off the burner (or burners) of the cookstove, leaving the pilot burning, and went outside and showed the driver how best to position his truck to fill the tank. The driver inserted the hose into the butane tank and proceeded to fill the tank. While the butane tank was being filled, Dodson looked at the pressure gauge on the tank and observed that it was registering over 100 pounds per square inch pressure, and indicated the red danger zone of the gauge. About five minutes after the delivery truck had left, Dodson went back into the kitchen and observed flames coming up from behind the cookstove, between the cookstove and the wall, which flames were rising about two feet above the cookstove. Dodson grabbed a bucket from the cabinet, filled it with water, and put the flames out that were on top of the cookstove; however, he was unable to get enough water behind the stove to put out that fire. At this juncture, the pipe line between the wall and the cookstove blew out or burst, blowing gas straight up towards the ceiling; and when this gas came in contact with the flames it caused an explosion. When the explosion occurred, Dodson left the house and drove to Iredell to "get the fire department." The fire department "came right on out," but they were unable to put out the fire. As a result, Dr. Walker's ranch house burned to the ground, along with all of its contents. The house and contents were valued at $44,000.00.

Plaintiff-Appellee introduced the testimony of Charles Parrish, a registered en-

gineer for Haag Engineering Company of Dallas, Texas, who had had extensive experience not only as a professional engineer, but also as an employee of Lone Star Gas Company. Parrish went out to the Walker ranch on December 12, 1970 and made an inspection of the butane tank (which was still buried in its original location) as well as the premises where the ranch house stood. He talked to Dodson about the circumstances surrounding the explosion and fire. He observed the various fittings of the butane tank under the dome cover, such as the filler opening, vapor return outlet, dial type pressure gauge, the "pop" valve, the "off and on" valve, and pressure regulator.

The vapor return outlet was a fitting into which a hose could be connected to run back to the tank of the delivery truck, so that when the buried tank is being filled any excess vapor pressure would be carried back to the truck tank. This is a safety feature designed to avoid excess pressure from being built up inside the buried tank. (In this connection, this vapor return outlet was not utilized by the Farmers Butane driver, even though the pressure gauge showed the pressure to be in the danger zone.)

The "pop" valve is also a safety feature, which will release excess tank pressure into the air. By "excess tank pressure" is meant pressure in excess of 101 pounds per square inch, insofar as Dr. Walker's butane tank is concerned. Vapor released by the "pop" valve into the air can also be dangerous, as such vapor can drift under the house and cause an explosion. In our situation, the "pop" valve did not function so as to release the excess pressure.

Parrish testified that one of the copper fittings of the butane tank was swollen, which indicated to him that the tank contained high pressure.

The pressure regulator is designed as a safety feature to hold excess high pressure in the tank and prevent it from being transmitted into the house. In other words, when the tank pressure exceeds 101 pounds per square inch, the pressure regulator is supposed to keep this excess pressure from leaving the tank. In our case, when the tank was filled, the pressure regulator did not hold the excess pressure back, and the high pressure went on into the house to the cookstove.

Parrish testified that in January, 1971, the butane tank was dug up and removed to Dallas, Texas, where he analyzed the contents. He found the contents then remaining in the tank to contain 22% propane, .7% ethane, 14% isobutane, and 63.-3% normal butane. Since propane is a high pressure gas as opposed to butane, which is a low pressure gas, this analysis of the tank contents confirmed the opinion he already had reached; namely, that the explosion and fire had been caused by excess pressure being piped into the house and cookstove. That is to say, Parrish's chemical analysis of the tank contents was merely cumulative in nature, and corroborated the opinion he had already reached as a result of his physical inspection of the premises and his conversation with Dodson.

The Walker butane tank and system was a low pressure system designed for the use of butane, and was not designed to use a high pressure gas such as propane. The pressure regulator had worked without any problems prior to Appellant's filling of the tank on the day of the explosion and fire in question. Parrish testified that in his opinion the pressure regulator's failure to work was caused by a high pressure gas being put into the tank. That is to say, the pressure regulator worked well enough to prevent excess pressure from entering the house if only butane was used. In his opinion the excess pressure was caused by the 22% propane.

According to Parrish, butane systems of the type Dr. Walker had (where the tank is buried in the ground) are being "phased out" and replaced by more modern propane systems in which the tanks are not buried.

He stated that any person delivering fuel to fill a tank of the type Dr. Walker had should take special precautions not to fill it with a high pressure gas such as propane.

Parrish's testimony was admitted into evidence without any objection from Appellant. Moreover, his testimony was by deposition, meaning that Appellant was afforded a greater opportunity to make objections than he would otherwise have had if his testimony had been in person from the witness stand.

Appellant asserts three points of error as follows: (1.) That there is no evidence or insufficient evidence that Appellant had any duty to serve or inspect the defective regulator on Appellee's tank; (2.) No evidence or insufficient evidence that any negligent act of Appellant was a proximate cause of the accident; and (3.) That there is no competent and probative evidence that Appellant committed any negligence by act or omission in Bosque County, Texas. We overrule these points and affirm the trial court's judgment.

■ Subdivision 9a of Article 1995, VATS, provides that a suit based on negligence may be brought in the county where the act or omission of negligence occurred, and that the necessary venue facts are: (1.) that an act or omission of negligence occurred in the county of suit; (2.) that such was the act or omission of defendant, or its agent acting within the scope of employment; and (3.) that such negligence was a proximate cause of plaintiff's injuries. Lone Star Gas Co. v. Sutherlin (Waco, Tex.Civ.App.1970) 457 S.W.2d 381, no writ history.

■ In the case at bar, no findings of fact or conclusions of law were requested of or. made by the trial court. Where there are no findings of fact, all fact issues will be resolved in favor of the trial court ruling if there is any probative evidence supporting it. In determining the

sufficiency of the evidence as a matter of law to support the ruling of the trial court, we are obliged to disregard all adverse evidence and give credit to all evidence that is favorable to the successful party, indulging every reasonable conclusion that is favorable to him. If discarding all adverse evidence and giving credit to all evidence that is favorable to the successful party, and indulging every reasonable conclusion that is favorable to him, a trier of the facts might have found in his favor, then it is to be concluded that there is evidence to support the finding. Banks v. Collins (1953) 152 Tex. 265, 257 S.W.2d 97. The test on appeal from an order sustaining or overruling a plea of privilege is the same as in any other civil case. Compton v. Elliott (1935) 126 Tex. 232, 88 S.W.2d 91, opinion adopted by the Supreme Court.

■ In the case at bar the Defendant-Appellant Farmers Butane Gas Co., Inc., was handling a dangerous commodity. From those who handle explosives, combustible gases, gasoline, petroleum, electricity and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved. McAfee v. Trans Gas Corp. (1941) 137 Tex. 314, 153 S.W.2d 442; Robert R. Walker, Inc. v. Burgdorf (1951) 150 Tex. 603, 244 S.W.2d 506.

■ In the instant case, Defendant-Appellant Farmers Butane owed this high degree of care to Plaintiff-Appellee Dr. Walker. The record is ample to sustain the implied finding of the trial court that an act of negligence was committed by Defendant-Appellant in Bosque County which proximately caused damage to Plaintiff-Appellee.

Judgment of the trial court is accordingly affirmed.

Affirmed.