**NATIONAL STEEL SERVICE CENTER, INC., Appellee,**

v.

**William M. GIBBONS, Trustee of the Property of the Chicago, Rock Island and Pacific Railroad Company, Appellant.**

No. 66801.

Supreme Court of Iowa.

May 19, 1982.

·Bruce E. Johnson, and Arthur E. Gamble of Gamble, Riepe, Burt, Webster & Davis, Des Moines, and O. L. Houts, Chicago, Ill., for appellant.

Robert M. Wattson, John C. Hart, and David E. Bland of Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., and John A. Templer, Jr., of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

McCORMICK, Justice.

The United States Court of Appeals for the Eighth Circuit has certified the following question to us: "Does the theory of strict liability for abnormally dangerous activities apply to a common carrier under the circumstances of this case?" We answer the question affirmatively.

The court of appeals recited the facts it deemed relevant to the certified question:

This is a civil action brought by National Steel Service Center, Inc., (National Steel) against William Gibbons, the bankruptcy trustee of the Chicago, Rock Island and Pacific Railroad Company (Rock Island) for damages resulting from a train accident on September 1, 1975. On that date, the Rock Island operated a train along its right-of-way which consisted in part of eleven tank cars loaded with propane gas. The train derailed and four tank cars exploded, resulting in extensive damage to a warehouse owned by National Steel. National Steel sought recovery under theories of *res ipsa loquitur*, specific negligence, and strict liability.

At trial, the jury ruled in favor of the defendant on the *res ipsa loquitur* claim. The district court directed a verdict for the defendant on the specific negligence theory. The court entered a directed verdict for the plaintiff on the strict liability claim. In a special interrogatory, the jury found that National Steel suffered $443,623 in damages as a result of the explosion, and judgment was entered accordingly.

The certification was in response to a motion by the Rock Island asking the court of appeals to certify to this court the question of whether the theory of strict liability was properly applied in the federal action.

The parties agree that this court has previously adopted the doctrine of strict liability for abnormally dangerous activities in blasting cases. The leading case is *Watson v. Mississippi River Power Company*, 174 Iowa 23, 156 N.W. 188 (1916). The court's adherence to the doctrine has been mentioned in other cases. *See Davis v. L. & W. Construction Company*, 176 N.W.2d 223, 224–25 (Iowa 1970); *Lubin v. Iowa City*, 257 Iowa 383, 389, 131 N.W.2d 765, 769 (1964); *Monroe v. Razor Construction Co.*, 252 Iowa 1249, 1251–52, 110 N.W.2d 250, 252 (1961); *Pumphrey v. J. A. Jones. Construction Company*, 250 Iowa 559, 561, 94 N.W.2d 737, 738 (1959). In *Davis*, the court said the rule is that "if one engages in an activity on his own land of such hazardous nature as to involve risk of harm to the person, land or chattels of neighboring parties, he is liable for the consequences proximately resulting therefrom without regard to degree of care, scientific manner in which done, purpose or motive." 176 N.W.2d at 225. The doctrine stems from the famous English case of *Rylands v. Fletcher*, 3 H. & C. 774 (1865), *rev'd* L.R. 1 Ex. 265 (1866), *aff'd* L.R. 3 H.L. 330 (1868). *See Lubin*, 257 Iowa at 386–90, 131 N.W.2d at 768; W. Prosser, *The Law of Torts* § 78 (4th ed. 1971).

The doctrine is incorporated in *Restatement (Second) of Torts* § 519 (1977):

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

The reason for the rule is explained in Comment d:

The liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity. It is founded upon a policy of the law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against that harm when it does in fact occur. The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character.

Factors for determining whether an activity is abnormally dangerous are delineated in § 520.

Rock Island appears to concede that the strict liability doctrine would apply in this case if it were not a common carrier. It does not deny, for example, that transporting liquified propane gas is an abnormally dangerous activity within the strict liability rule. Therefore we pass that issue. We note, however, that transporting gasoline has been recognized as uniquely hazardous. *See Siegler v. Kuhlman*, 81 Wash.2d 448, 454, 502 P.2d 1181, 1184 (1972), *cert. denied*, 411 U.S. 983, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973). The explosive propensity of propane gas has also been demonstrated. *See Farmers Butane Gas Co. v. Walker*, 489 S.W.2d 949, 951–52 (Tex.Civ.App.1973).

The determinative issue presented by the certified question is whether this court will adopt the common carrier exception to the strict liability rule. In making that choice we are confronted with two lines of authority.

One line holds that a common carrier that is required to carry abnormally dangerous cargo offered to it for carriage should not be held strictly liable. The leading case for this view is *Actiesselskabet Ingrid v. Central Railroad Co.*, 216 F. 72 (2nd Cir.), *cert. denied*, 238 U.S. 615, 35 S.Ct. 284, 59 L.Ed. 1490 (1914):

We think there can be no doubt, so far as a common carrier is concerned, that such danger as necessarily results .to others from the performance of its duty, without negligence, must be borne by them as an unavoidable incident of the lawful per-

formance of legitimate business .... It certainly would be an extraordinary doctrine for courts of justice to promulgate to say that a common carrier is under legal obligation to transport dynamite and is an insurer against any damage which may result in the course of transportation, even though it has been guilty of no negligence which occasioned the explosion which caused the injury. It is impossible to find any adequate reason for such a principle.

*Id.* at 78; *see Town of East Troy v. Soo Line Railroad Co.,* 409 F.Supp. 326 (E.D. Wis.1976); *Christ Church Parish v. Cadet Chemical Corp.,* 25 Conn.Supp. 191, 199 A.2d 707 (1964); *Pope v. Edward M. Rude Carrier Corp.,* 138 W.Va. 218, 75 S.E.2d 584 (1953).

The second line of authority, shorter but more recent, does not recognize the common carrier exception. The leading case for this view is *Chavez v. Southern Pacific Transportation Co.,* 413 F.Supp. 1203 (E.D.Cal. 1976), where the court found that the common carrier exception would not be recognized in California. The court based its decision on the California Supreme Court's use of risk distribution analysis in imposing strict liability in tort in such cases as *Greenman v. Yuba Power Product, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). The *Chavez* court reasoned that the common carrier or "public duty" exception is based only on a consideration that it is unfair to impose liability on a carrier for engaging in an activity required by the public. It added:

> But, there is no logical reason for creating a "public duty" exception when the rationale for subjecting the carrier to absolute liability is the Carrier's ability to distribute the loss to the public. Whether the carrier is free to reject or bound to take the explosive cargo, the plaintiffs are equally defenseless. Bound or not, Southern Pacific is in a position to pass along the loss to the public. Bound or not, the social and economic benefits which are ordinarily derived from imposing strict liability are achieved. Those which benefit from the dangerous activi-

ty bear the inherent costs. The harsh impact of inevitable disasters is softened by spreading the cost among a greater population and over a larger time period. A more efficient allocation of resources results. Thus, the reasonable inference to be drawn from the adoption of the risk distribution rationale in *Smith v. Lockheed Propulsion Co.,* [247 Cal.App.2d 774, 56 Cal.Rptr. 128 (1967)] is that California would follow the path of the Supreme Court of Washington in *Siegler v. Kuhlman, supra,* and find that carriers engaged in ultrahazardous activity are subject to strict liability.

413 F.Supp. at 1214. Strict liability was also imposed in *Siegler v. Kuhlman,* and the *Chavez* rationale was endorsed and applied in *Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.,* 517 F.Supp. 314 (N.D.Ill.1981), a suit against a manufacturer.

Rock Island contends this court has already recognized the common carrier exception, and since it is the better view, should adhere to that position. We do not believe, however, that the issue has been answered in prior cases, and we believe, in any event, that the *Chavez* line of authority represents the better view.

Common carrier liability for ultrahazardous activity was involved in *Walker v. Chicago, Rock Island and Pacific Railroad Co.,* 71 Iowa 658, 33 N.W. 224 (1887). On appeal this court held that the evidence was insufficient to support submission of the case on the theory of negligence relied on by the plaintiff. No claim of liability without fault was made. Subsequently the *Walker* holding was erroneously distinguished in dicta as based on a rule that a carrier could be held liable only for negligence. *Watson v. Mississippi Power Company,* 174 Iowa at 35, 156 N.W. at 193. In later cases the court did refuse to impose strict liability on private contractors engaged in blasting pursuant to public contracts. Those cases, however, were based on a theory that the contractors should enjoy the same immunity for the activity that the government would have had. *See Monroe v. Razor Con-*

*struction Co.*, 252 Iowa at 1252, 110 N.W.2d at 252; *Pumphrey v. J. A. Jones Construction Company*, 250 Iowa at 562, 94 N.W.2d at 738. We need not decide the current viability of those holdings. We find that this court has not previously decided the present question.

In arguing that the common carrier exception represents the better view, Rock Island attacks risk distribution analysis as applied to common carriers generally and as applied in the circumstances of this case. It also points out that the exception has been adopted by the American Law Institute in *Restatement (Second) of Torts* section 521.

In attacking risk distribution analysis as applied to carriers generally, Rock Island asserts carriers cannot raise their tariffs to cover past losses. The fallacy in this argument, however, is that risk of liability is a factor to be considered in determining tariffs. *See Akron, Canton & Youngstown Railroad Company v. Interstate Commerce Commission*, 611 F.2d 1162, 1170 (6th Cir. 1979), *cert. denied*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 34 (1980) ("A question of possible liability for damage resulting from carriage of a commodity is therefore within the Commission's jurisdiction as the regulator of the economics of interstate rail transport."). Thus, assuming tariffs cannot be increased to cover past losses, they can be adjusted to cover potential liability. Moreover, tariffs may be set at a level to assure "a reasonable and economic profit or return (or both) on capital employed in the business." 49 U.S.C. § 10704(a)(2). Rock Island cites *Consolidated Rail Corporation v. Interstate Commerce Commission*, 646 F.2d 642 (D.C.Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 587, 70 L.Ed.2d 488 (1981), as contrary authority. The court in that case, however, merely held that the Commission did not act illegally in rejecting certain tariffs as unreasonable when they included amounts for a safety measure that the Commission determined was unnecessary.

In challenging application of risk distribution analysis in the circumstances of this case, Rock Island points out that it is bankrupt and that, in contrast, the corporate plaintiff was insured for all but $5,000 of its loss. We decline, however, to decide the issue of a carrier's liability for abnormally dangerous activities on the basis of the parties' relative abilities to spread the risk of loss in a particular case. To achieve a measure of uniformity and predictability, we prefer to adopt a rule for general application. We believe it is more likely in the generality of cases that a carrier will be better able to bear the loss than the party whose property is damaged. Moreover, the carrier is in a position to spread the risk of liability among the beneficiaries of its services. As in *Lubin v. Iowa City*, 257 at 391, 131 N.W.2d at 770, we think "they should bear the loss and not the unfortunate individual whose property is damaged without fault of his own." Although tort liability should not always be determined on the basis of which party can ordinarily best stand or distribute the loss, that basis is appropriate in this kind of case. *See id.* at 392, 131 N.W.2d at 771.

Here we have two parties without fault. One of them, the carrier, engaged in an abnormally dangerous activity under compulsion of public duty. The other, who was injured, was wholly innocent. The carrier was part of the dangerous enterprise, and the victim was not. The carrier was in a better position to investigate and identify the cause of the accident. When an accident destroys the evidence of causation, it is fairer for the carrier to bear the cost of that fortuity. Apart from the risk distribution concept, the carrier is also in a better position than the ordinary victim to evaluate and guard against the risk financially.

Furthermore, the carrier is in a superior position to develop safety technology to prevent such accidents, and assessment of accident costs is one means of inducing such developments:

In some cases it may be reasonably clear that only injurers, or only victims, can be looked to for advances in safety technology or other adjustments that might minimize accident costs . . . .

This analysis might explain the major pockets of strict liability in the law.

These include liability for damage caused by "ultrahazardous" activities . . . . All are cases where the potential victims of the injury are not in a good position to make adjustments that might in the long run reduce or eliminate the risk of injury. It is difficult to imagine the development of cost-justifiable technologies that would . . . enable a traveler at a railroad crossing to supervise the selection and monitoring of the railroad's crew.

R. Posner, *Economic Analysis of Law* § 6.11 at 140–41 (2d ed. 1977).

We conclude that the doctrine of strict liability for abnormally dangerous activities should be applied in the circumstances of this case. In so holding we do not overlook the Restatement position. We note, however, that we are committed to a broader application of the strict liability doctrine of *Rylands v. Fletcher* than is reflected in the Restatement. We do not limit it to "ultrahazardous activity." *See, e.g., Healey v. Citizens' Gas & Electric Co.*, 199 Iowa 82, 201 N.W. 118 (1924); *cf.* W. Prosser, *The Law of Torts, supra*, at 512 ("The Restatement of Torts has accepted the principle of *Rylands v. Fletcher*, but has limited it to an 'ultrahazardous activity' of the defendant . . . ."). Nor have we limited risk distribution analysis to the products liability field. *See, e.g., Lubin*, 257 Iowa at 391, 131 N.W.2d at 770. For the reasons expressed in this opinion, we decline to adopt the common carrier exception in *Restatement (Second) of Torts, supra*, section 521. Other Restatement provisions affecting the strict liability doctrine are not at issue here, and we do not pass on them.

We answer the certified question in the affirmative.

CERTIFIED QUESTION ANSWERED.

All Justices concur except ALLBEE and SCHULTZ, JJ., who dissent, and UHLENHOPP, J., who takes no part.

ALLBEE, Justice (dissenting).

I dissent because I believe that the court should adopt as our own rule the common carrier exception to the strict liability rules for abnormally dangerous activities embraced by the American Law Institute in the Restatement (Second) of Torts (1977), to wit:

> § 521. Abnormally Dangerous Activity Carried on in Pursuance of a Public Duty
>
> The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier.

This exception is explained by Comment *a* to section 521, which states in pertinent part:

> [A] common carrier, in so far as it is required to carry such explosives as are offered to it for carriage, is not liable for harm done by their explosion, unless it has failed to take that care in their carriage which their dangerous character requires.

The considered view of the American Law Institute seems to me to be more authoritative and to carry much greater weight than the reasoning of the single district judge in *Chavez v. Southern Pacific Transportation Co.*, 413 F.Supp. 1203 (E.D. Cal.1976), the decision this court builds upon to reach its ultimate rationale.

SCHULTZ, J., joins this dissent.