Daryl O'TOOL and Sheila
O'Tool, Appellees,

v.

Paul HATHAWAY and Joe Hathaway,
Individually and doing business as
Hathaway Limited, Appellants.

No. 89–1010.

Supreme Court of Iowa.

Sept. 19, 1990.

James A. Pugh and William D. Werger of Morain, Burlingame, Pugh, Juhl & Peyton, West Des Moines, for appellants.

John M. McHale of The Peters Law Firm, P.C., Council Bluffs, for appellees.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and David L. Dorff, Asst. Attys. Gen., for amicus curiae Iowa Dept. of Agriculture and Land Stewardship, Div. of Soil Conservation.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

This controversy arose when the defendants' soil conservation terrace suffered a break and spilled 40,000 gallons of water into the neighboring plaintiffs' basement. On appeal from the district court's judgment for the plaintiffs, the defendants challenge the court's findings of liability and proximate cause. The plaintiffs cross-appeal because the trial court awarded them all their material cost but no labor expense to restore their home. The Soil Conservation Division of the Iowa Department of Agriculture and Land Stewardship appears as amicus curiae to brief its concern over the impact of the judgment on soil conservation practices in the state. We affirm on the appeal, reverse on the cross-appeal, and remand for entry of an additional judgment on plaintiffs' claim for damages.

I. For over thirteen years plaintiffs Daryl and Sheila O'Tool have resided in a home located at the southwest corner of Hastings, Iowa. Defendants Paul and Joe Hathaway own farm ground across the road. The Hathaway farm is rolling to steep and substantially elevated above the O'Tool home.

During the summer of 1986, the Hathaways had constructed on their property a series of level narrow-based conservation terraces. One of those terraces, known in this litigation as "6W," was situated above and to the south and east of the O'Tool home. When completely full, the terrace was designed to hold approximately 57,000 gallons of water. When capacity was reached, the terrace was designed to allow only the additional rainfall to drain over the top of the terrace while the rest remained pooled. This conservation device was planned and inspected by a technician employed by the Iowa Soil Conservation Service in compliance with standards established by the USDA Soil Conservation Service.

During the late evening and early morning hours of May 25–26, 1987, approximately eight inches of rain fell on Hastings. The ditches traversing the highway between the O'Tool and Hathaway properties ran high but did not overflow. At approximately 7:45 a.m., terrace 6W suffered a V–shaped break to the bottom of the terrace, ten feet wide and four feet deep. Within minutes, all the water held back by the terrace flowed out in what witnesses described as a "tidal wave" or "avalanche" of water heading for the O'Tool property.

The flood created by the terrace break collapsed the east wall of a newly constructed lower level of the O'Tools' home and filled the entire basement with five feet of water. The O'Tools sued the Hathaways for the resulting damage. They alleged that construction of the terrace had altered the natural flow of the water from the dominant to the servient estate thereby creating liability for the dominant landowner irrespective of any care with which the terrace had been built. The case was tried to the court.

The trial court ruled that the Hathaways' soil conservation plan had effectively altered the natural flow of the surface water drainage by pooling the water within a level terrace. When suddenly released, the velocity of the water flow was substantially increased from the natural runoff rate. Given the elevated height of the terrace in

relation to the neighboring property, and the evidence that terraces routinely break for a variety of reasons, the court concluded that the terrace construction involved a foreseeable risk of harm to the servient landowner. Because of this risk, the court held that it was negligent for the Hathaways "to install such terraces without allowing for protection of neighboring landowners in the event said terrace burst."

The court entered judgment for plaintiffs' "out of pocket" cleanup and rebuilding expenses in the sum of $10,514. It denied as "too speculative," however, any claim of labor for cleanup and construction performed by either plaintiffs or their friends and relatives. It is from this judgment that defendants appeal and plaintiffs cross-appeal.

Our review is for the correction of errors at law. Iowa R.App.P. 4.

II. Appellants take aim at both the legal and factual basis upon which the court imposed liability. Their principal contention is that the court imposed liability without fault and that the chilling effect of such a ruling will deter farmers from beneficial soil conservation practices. Were appellants' characterization of the trial court's ruling accurate, we would concur in its concern. We are convinced, however, that the court's decision is grounded on well-established rules concerning drainage of surface water and neighboring landowners' mutual duties of care.

In *Rosendahl Levy v. Iowa State Highway Commission*, 171 N.W.2d 530 (Iowa 1969), this court stated what is known as Iowa's "natural flow" doctrine:

> The general rule is that the dominant owner is entitled to drain surface water in a natural watercourse from his land over the servient owner's land and if any damage results the servient owner is without remedy. This rule, however, is subject to qualification. We have many times held that if the volume of water is substantially increased or if the manner or method of drainage is substantially changed and actual damage results, the servient owner is entitled to relief.

*Id.* at 536; *see also* Iowa Code § 465.22 (1989) (immunizing landowner from liability for altering watercourse unless the drainage system "increases the quantity of water or changes the manner of discharge on the land of another").

More recently, this court has observed that a corollary to the foregoing rule is "an overriding requirement that one must exercise ordinary care in the use of his property so as not to injure the rights of neighboring landowners." *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 745 (Iowa 1977). *Oak Leaf* involved a claim that the straightening of a meandering stream had accelerated the flow of the water course to a neighbor's injury. Citing *Rosendahl*, we noted that cases of this type depend largely on their individual facts and that determinations of liability turn on the reasonableness of the changes effected under all the circumstances. *Oak Leaf*, 257 N.W.2d at 745–46.

■ With these principles in mind, we turn to appellants' argument. First, they claim that no liability can be imposed based on violation of the "natural flow" doctrine because the terraces are not designed to divert or increase the flow of water. Appellants fail to recognize, however, that liability also exists if (1) the manner or method of drainage is substantially changed and (2) actual damage results. *Rosendahl*, 171 N.W.2d at 536. Both criteria are met in this case.

■ Appellants' own expert from the Soil Conversation Service (SCS) testified that terracing substantially changes the manner and method of surface water drainage. Terraces intercept the flow of water, a delay which allows rainfall to percolate into the soil instead of washing down the hill. The SCS technician also testified that terraces either markedly reduce or completely eliminate runoff. Given this evidence, we find no error in the court's conclusion that the Hathaways' terrace altered the surface water drainage on their property.

■ Appellants next contend that even if their terraces altered the natural water

drainage, it was not the pooling of the water but the break in the terrace—and the velocity with which the water was suddenly discharged—that caused the O'Tools' injury. Because the O'Tools presented no evidence that the design or construction of the terrace was negligent, appellants assert that no liability can attach. Here, however, appellants overlook the "overriding requirement" of ordinary care in the use of property about which the court in the *Oak Leaf* case spoke. *Oak Leaf,* 257 N.W.2d at 745.

The district court found that the Hathaways knew that (1) this terrace was designed to withstand a 4.7 inch rainfall but that the potential existed for a rain in excess of that amount within a twenty-four-hour period, (2) terrace breaks are foreseeable and put the servient estate at risk for damage, and (3) the terrace was constructed solely for their own benefit. These factual findings are binding on us on appeal if supported by substantial evidence. Iowa R.App.P. 14(f)(1). That standard is easily met in the record before us.

It is true that the O'Tools proved no negligence by the Hathaways regarding the actual construction or maintenance of the terrace. Given the location of the terrace and the foreseeability of a break, however, it was not reasonable for the Hathaways to alter the natural drainage this way. By doing so, they breached their duty of care to their neighboring landowners. We find no error in the district court's conclusion that it was negligent to construct a terrace of this kind on a dominant estate when harm to the servient estate was foreseeable.

■ We are urged by amicus curiae to reverse the district court and immunize farmers from liability under any circumstances for beneficial soil conservation practices. We are not persuaded to do so principally because we do not think the risk of liability is ordinarily great. The record does reveal that terraces like this one often break. It is not equally true, however, that terrace breaks typically cause the extensive damage found in this case. The terrace here was located directly above the O'Tools' home. Had the terrace been designed to discharge pooled water over the Hathaways' own land in the event of a break, or even over a neighboring farmer's field, the reasonableness of the terracing would probably not be in issue. In other words, we do not view conservation terracing as an inherently dangerous activity that in all circumstances would subject the user to liability without fault. *Cf. Lubin v. Iowa City,* 257 Iowa 383, 391, 131 N.W.2d 765, 770 (1965) (imposing liability without fault on municipality because damage caused by unmaintained and bursting water mains was "not accidental or unexpected").

■ III. Appellants also argue that the record does not support the court's conclusion that the broken terrace was the proximate cause of the O'Tools' damage. Proximate cause is a fact question and only in exceptional cases may it be decided as a matter of law. Iowa R.App.P. 14(f)(10). The district court's findings are binding on us if supported by substantial evidence. Evidence is substantial if a reasonable fact finder "would accept it as adequate to reach a conclusion." *Baty v. Binns,* 354 N.W.2d 777, 780 (Iowa 1984). We consider the evidence in the light most favorable to the trial court's judgment. *Moody v. Bogue,* 310 N.W.2d 655, 660 (Iowa App.1981).

We recently explained in *Kendall/Hunt Publishing Co. v. Rowe,* 424 N.W.2d 235, 245 (Iowa 1988), that when deciding an issue of proximate cause,

[a] fact finder employs a two-part test: (1) but for the defendant's conduct, the plaintiff's damages would not have occurred; and (2) the defendant's fault must be a substantial factor in bringing about the plaintiff's harm.

The district court found that the O'Tools' property would not have been damaged absent the construction, location, and breakage of the Hathaways' terrace. In this regard, the court placed considerable weight on the testimony of witnesses—including the town mayor—who happened to pass by just as the flood was occurring. Contrary to the appellants' assertion, the evidence does not suggest that the damage

was caused by the natural rising of drainage ditches during the storm. The eyewitnesses all testified that the ditches were unobstructed and adequately handling the rainwater. The water that flowed into the O'Tools' basement cascaded directly from the broken terrace. The proximate cause determination made by the court finds strong support in this record. No error appears.

■ IV. At trial the O'Tools submitted evidence of the material cost for reconstruction of their basement, and the labor cost for the many hours spent by themselves and their friends to clean up and repair their home following the flood. They assessed the hourly labor rates at roughly three-fourths of what their friends earn in their normal jobs. The trial court awarded full compensation for material costs but denied recovery for all labor charges, stating that the O'Tools' labor cost evidence "was pure speculation and is disregarded." The O'Tools have cross-appealed this decision.

We stated the general rule regarding review of trial court decisions on speculative damages evidence in *Orkin Exterminating Co. v. Burnett,* 160 N.W.2d 427, 430 (Iowa 1968):

> Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

We have consistently applied the *Orkin* rule since its inception. *See, e.g., Bangert v. Osceola Co.,* 456 N.W.2d 183, 190–91 (Iowa 1990); *Renze Hybrids, Inc. v. Shell Oil Co.,* 418 N.W.2d 634, 639 (Iowa 1988); *Robinson v. Perpetual Serv. Corp.,* 412 N.W.2d 562, 567 (Iowa 1987); *Larsen v. United Fed. Sav. & Loan Ass'n of Des Moines,* 300 N.W.2d 281, 288 (Iowa 1981).

Following the *Orkin* rule, the question is whether the very existence of labor costs was mere speculation. We conclude that it was not. Obviously, the O'Tools' home did not repair itself. The O'Tools should not be disadvantaged in this cause of action simply because they did the repair work themselves. *See, e.g., Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300, 304 (5th Cir.1976) ("The cost of repairs performed internally by the injured party ... are recoverable in a negligence action."); *United States v. Peavey Barge Line,* 748 F.2d 395, 399 (7th Cir.1984) (allowing recovery of repair costs "even if the injured party makes the repairs itself since such charges would be billed by any outside firm selected to complete the repairs"). Nor may they be penalized because their friends' labor was furnished without definite agreement for compensation. *See Clark v. Berry Seed Co.,* 225 Iowa 262, 271, 280 N.W. 505, 509–10 (1938) (tortfeasor must pay value of services to compensate for negligence whether services are furnished "from affection, philanthropy or contract"); *accord Iowa Des Moines Nat'l Bank v. Schwerman Trucking Co.,* 288 N.W.2d 198, 205 (Iowa 1980); *Varnham v. City of Council Bluffs,* 52 Iowa 698, 699, 3 N.W. 792, 793 (1879).

The O'Tools are entitled as a matter of law to reasonable compensation for their own labor and that of their friends. The trial court erred to hold otherwise. We therefore remand this case for determination, on the record previously made, of the reasonable value of the labor necessary to make the repairs caused by appellants' negligence. In all other respects, the judgment of the district court is affirmed.

AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS–APPEAL.